UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARLOS CHINCHA,                    *      Case No. 17-CV-6127(ILG)
                                   *
                Plaintiff,         *      Brooklyn, New York
                                   *      April 1, 2019
        v.                         *
                                   *
MANOJKUMAR PATEL,                  *
                                   *
                Defendant.         *
                                   *
* * * * * * * * * * * * * * * *

        TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
           BEFORE THE HONORABLE STEVEN L. TISCIONE
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          LOUIS MOSHE LEON, ESQ.
                            Law Offices of William
                              Cafaro
                            108 West 39th Street
                            Suite 602
                            New York, NY  10018


For the Defendant:          JASON MIZRAHI, ESQ.
                            Levin-Epstein & Associates
                              P.C.
                            One Penn Plaza
                            Suite 2527
                            New York, NY  10119




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 10:43 a.m.)

2          THE CLERK: Civil cause for a motion hearing, 17-CV-

3     6172, Chincha v. Patel.

4          Counsel, please state your appearances for the

5     record.

6          MR. LEON:  Louis Leon, from the Law Offices of

7     William Cafaro, on behalf of the plaintiff, Carlos Chincha.

8     Good morning, Your Honor.

9          MR. MIZRAHI:  Jason Mizrahi, from Levin-Epstein &

10    Associates, counsel for the defendant.  Good morning, Your

11    Honor.

12         THE COURT:  Good morning.

13         All right.

14         MR. LEON:  Your Honor, if I may.  Louis Leon for the

15    plaintiff.

16         I would like to apologize very sincerely to the

17    court for being late. My understanding -- my office had

18    calendared this conference for much later today. I was

19    actually down the block.  As soon as my office let me know I

20    literally ran here, which is why I'm out of breath.  I

21    apologize to the court.

22         THE COURT:  Please try to make sure that you keep

23    more careful track of the schedule so you're here on time.

24         MR. LEON:  Absolutely, Your Honor.

25         THE COURT:  All right.  So what information is still

3

1     outstanding?

2         MR. LEON:  Would Your Honor mind if I just go

3     chronologically, or at least with the topics, because that

4     might better address it.

5         In the first category of records, or deficient

6     responses, we have where respondents respond to the document

7     requests objecting and stating that pursuant to these

8     objections, but without waiving them, they are providing

9     certain documents even though the rules leave crystal clear

10    that they have indicated whether they're withholding

11    documents.

12        And in those particular responses there are

13    objections to and stating that the following terms are vague

14    and ambiguous.  Lunch breaks, personnel files, employees,

15    supervisors, managers, personnel manuals, handbooks, wage

16    statements, et cetera.

17        So we believe not only are those objections in and

18    of themselves baseless but they're in willful non-compliance

19    with the federal rules that indicate that they have to state

20    whether they're withholding documents.  So that hasn't been

21    revised yet.

22        THE COURT:  Okay.  Are you withholding documents?

23        MR. MIZRAHI:  We are not, Your Honor.

24        THE COURT:  Okay.  So just make that clear.

25        MR. LEON:  I'm sorry, Your Honor.

4

1          THE COURT:  So just make that clear.

2          MR. LEON:  Number two are tax returns.

3          When I spoke to -- I'm sorry.  I don't want to

4     butcher your last name, Mr. Mizrahi -- opposing counsel's

5     boss, Josh Levin-Epstein, he indicated to me that despite the

6     fact that they had provided tax returns quarterly for the

7     years 2014 through 2017, that those years were still

8     incomplete.  That he was still trying to get me supplemental

9     information.

10          We had also requested 2014 through the present,

11     which would mean 2014 and 2018 and nothing has been provided

12     for those years.

13          So to the extent that tax returns exist for those

14     years, and there's still supplemental information regarding

15     the years that they already provided us records with, we ask

16     that they be provided.

17          One, the $500,000 threshold issue is being

18     contested.  Two, defendants are even contesting that they

19     employed more than one person in a given year.

20          So as a result, we're also seeking any -- I forget

21     what the particular section of the tax returns are called, but

22     where it indicates how much taxes you are remitting to the

23     government on behalf of the plaintiff, or on behalf of the

24     employees, excuse me.

25          There is no such mention in any of the records that

5

1    we received of taxes being remitted on behalf of my client or

2    anyone else.

3           So we have reason to believe that those documents

4    are either in existence but haven't been turned over or have

5    inadvertently been forgotten in the process.

6           And we would like to have them, especially since

7    FLSA jurisdiction is at issue.

8           THE COURT:  Okay.

9           MR. MIZRAHI:  If I may, Your Honor.  Just to give

10   you a brief background of this case.

11          This is a Fair Labor Standards Act claim of New York

12   Labor Law claims.  The fact pattern of this case indicates

13   that we're dealing with a janitorial exemption.

14          The plaintiff provided superintendent and janitorial

15   services for a residential building in Queens.  So the

16   threshold issue in this case is whether or not an exemption

17   applies.  And if it does, how it applies.

18          So the facts and the fact discovery in this case is

19   going to be dealing with whether or not the threshold --

20   whether there's jurisdictional -- the jurisdictional component

21   is satisfied.

22          In the very beginning of this case we provided over

23   a hundred or 200 documents that were in our possession.

24   Documents relating to the -- whatever the initial disclosures

25   that would go to the facts and defenses of this case.

1              Most recently, there was a civil case conference

2     before Your Honor in February.  During that case conference we

3     had a signed a confidentiality order, after which point we had

4     submitted tax returns to opposing counsel.

5              Soon thereafter we had reached out to our client to

6     tell him that he needed to get into contact with his bank, who

7     had access to the other financial information that was being

8     requested.

9              None of the payroll records were in our client's

10    possession.  These are old records.  They were in the

11    possession of a third-party bank.  We had had to go through

12    the formalities of making the requests to receive them Friday.

13             Last Friday I received copies of these payroll

14    records.  I looked over them briefly on Friday and over the

15    weekend.  They cover most of the relevant period.

16             I'm prepared to turn them over as soon as we mark

17    any sensitive or confidential information that needs to be

18    marked, and we have no objections to whatever the -- you know,

19    this isn't a case where we're withholding anything.

20             We've been providing everything that's been in our

21    possession, and during the discovery phases we've made it

22    known that we would be supplementing discovery when needed,

23    whenever we had documents that would come into our possession,

24    which has been the case.

25             THE COURT:  Okay.  So you've got financial documents

1    now, that you can produce once you, I guess, review it for

2    privilege.  What about the tax returns?

3           MR. MIZRAHI:  Shortly after the previous civil case

4    comes before Your Honor, we had received tax returns from my

5    client's financial adviser.  Until that point, we were

6    disputing the relevancy of the documents.  We didn't believe

7    that they were relevant.

8           We had felt producing them after the confidentiality

9    order had been signed and stipulated to.  I don't -- it's

10   regarding the outstanding tax returns that are being requested

11   for '14 and '18.  I don't believe 2018 had been filed -- has

12   been filed yet, so we -- they don't exist.

13          2014, I -- I need to look back to see why they

14   weren't produced along with '15, and '16, and '17, but my -- I

15   don't believe there should be any relevant period.  I feel

16   like -- I feel -- my apologies.  I have to look back to see

17   why they weren't produced.  They should have been produced

18   with '15, '16, and '17.

19          MR. LEON:  Your Honor, if I just may quickly?

20          THE COURT:  Uh-huh.

21          MR. LEON:  I know we bounced around a couple topics

22   there, but regarding tax returns and even any other financial

23   records or outstanding records, just to be clear, these are

24   records that were requested well over six months ago, and

25   during the last conference I got the impression that Your

8

1    Honor was a little frustrated at the fact that discovery

2    wasn't moving along a little quicker.  And that's why in the

3    letter that we filed with the court prior to that

4    conference --

5              THE COURT:  Uh-huh.

6              MR. LEON:  -- we made clear, here is some

7    outstanding stuff.  If we don't get any closure on it, we

8    intend to move to compel.  I don't take any pride and joy in

9    filing these motions or looking to get sanctions, even if that

10   is what we're seeking here today.

11             But the tax returns, to say that we're going to go

12   and find out now if we have them or not, I mean, these are

13   things that if I was in their position I would have known

14   about weeks before -- or days before coming to this

15   conference, not wait.

16             And opposing counsel indicated to me before the

17   start of this conference, including here, I believe the

18   implication is the same, that they -- 2014 may or may not

19   exist.  To not know the answer to that question even though

20   they were requested and we made clear in our motion to compel

21   and other papers that we were looking for that, I think it's a

22   little misleading.

23             And as to the employment and payroll records,

24   opposing counsel's boss, Joshua Levin-Epstein, indicated to me

25   on the phone that the reason they hadn't gotten those

9

1    documents from the bank yet was because his client just

2    remembered that he had those.  And just to be clear, my client

3    was paid in cash and check.

4              THE COURT:  Uh-huh.

5              MR. LEON:  My client does not -- and I'll let

6    defendants find out why during the deposition, but my client

7    does not have any records of checks or any bank statements

8    that would reflect these checks.

9              Those are things to my understanding, the way my

10   online banking system works and I'm sure theirs as well, if

11   you give a check to someone and they deposit it, you still

12   have a record on your online banking.  That information could

13   have been accessed six months ago.

14             And there was no objection to providing them.  In

15   fact, defendants indicated, we don't have responsive documents

16   up until a couple of weeks ago.

17             So to indicate that they just went through the

18   requests, clearly it wasn't a subpoena, they went through an

19   informal request to get it from the bank, and it appears that

20   they got it very easily, that could have been done many months

21   ago.

22             And so now, with only exactly one month ago that we

23   were here indicating all these issues and promising that we

24   would resolve them, to be back here again saying, again we're

25   going to be supplementing, we're going to be providing this

1    stuff to you, keeps leaving us with the feeling that we're

2    being sandbagged here and that at some point after deposition

3    new documents are going to arise that could have been easily

4    obtained.  That is my biggest frustration.

5           As the attorney for my plaintiff, I want to make

6    sure that we are litigating our case without ambush and having

7    proper time to get all the relevant information.

8           And as to the Enterprise coverage, individual

9    coverage, which is more at issue than any other FLSA case I

10   can remember having, to be clear, the sort of documents that

11   defendants claim that they've already provided responsive

12   information to but in fact they haven't, we asked them for

13   records showing rental -- the rental income or checks or money

14   orders, documents that they receive as payments from their

15   tenants.

16          Defendants claim they don't have that or they just

17   haven't provided a single document that -- I find it very hard

18   to believe that if they can find pay -- checks that were

19   issued to my client, they can't find further relevant time

20   period, checks provided to them or money orders provided to

21   them from their tenants, which aren't just residential

22   tenants, they're also commercial tenants that would have

23   provided by check.

24          And just to be clear, I don't like asking for over

25   expansive documents, but the reason why it's at issue here, we

11

1    believe that Enterprise coverage, yes, there's a requirement

2    of two or more employees.  But for individual coverage there

3    is no such requirement.

4            I just have to prove that my employee -- my client

5    was individually engaged in interstate commerce.  Part of my

6    argument will be in this case that if there are checks that --

7    excuse me, that I believe they exist and have this content, if

8    they reveal that my client was receiving, processing, dealing

9    with checks that have various bank names on them, money

10   orders, et cetera, I would argue that that in partially or

11   completely subjects the business to interstate commerce and my

12   client, and thus the FLSA jurisdiction.

13           So that's why I'm asking for those records which

14   defense don't claim we're not entitled to.  They're simply

15   claiming they don't have, which I find extremely hard to

16   believe, and again, leads us to believe that there's documents

17   that are being withheld.

18           And that also has to do with Enterprise coverage, et

19   cetera.  We've asked for I think something as broad as any

20   document showing, disproving, relating to Enterprise

21   individual coverage.  Not a single document.  Not a single

22   document.

23           And then lastly in conjunction with all this, we ask

24   -- and it's two limited questions, but interrogatories we

25   asked the defendants to indicate something as simple as, how

12

1    did you pay my client?  Was it salary, hour, et cetera?  And

2    what did you pay them?  What were the exact rates?

3          And the response through the different revised

4    responses have evolved to a generic, we paid him pursuant to

5    the law, pursuant to what the exemption is, that's what -- or

6    pursuant to the janitorial rules.  That's what we paid him and

7    we paid for his rent.

8          We believe that I shouldn't -- we shouldn't have to

9    walk through a deposition without knowing something as simple

10   as that when we allege it in the complaint, we've alleged it

11   in the responses to interrogatories of what my client was

12   being paid.  We don't think that that should not be provided.

13         And to the extent that any interrogatory responses

14   have to be provided, that there be a verified -- excuse me, a

15   revised verification that was belatedly provided to begin with

16   just a couple weeks ago.

17         And then lastly, we don't have complete information

18   regarding that other individual whose employment status is in

19   dispute.  It's a name -- a person by the name of Selso Perez.

20         My understanding is he still lives at the apartment

21   complex owned by the defendant.  So there's no reason why we

22   should not have his full contact information, at least his

23   address and his apartment number so we can serve a subpoena on

24   him if we need to.  Especially when defendants have indicated

25   to me that they intend to do the same thing.  So there's no

1    reason why we shouldn't have his contact information.

2            And in line with that, there's a tax attorney, I

3    believe the last name is -- excuse me, an accountant by the

4    name of Michael Katz, who is the one who finished the tax

5    returns or filed the tax returns on behalf of the defendant.

6            He's now, for the first time six months into this

7    case, being disclosed as a witness who now will supposedly

8    have information regarding the tax returns, but will also give

9    information arguing that my client was the only employee that

10   the defendant had throughout their lawsuit.

11           Yet again, something belatedly provided to us;

12   something that there's no excuse as to why it should not have

13   been provided in initial disclosures.

14           And this again is the reason why we believe that

15   being here today, having to write that motion, having to come

16   here today, having to, I'm sorry, hound the defense for

17   responses is the reason why all these fees and costs that we

18   had to -- that we had to invest into this process was

19   completely unnecessary.

20           And I know from my end, because I like the defense,

21   the firm in particular, I gave them so many opportunities to

22   try and resolve it and they didn't.

23           So I believe that these responses should be

24   compelled without objections, and that they should be forced

25   to pay us -- defense in general should be forced to pay us for

1    the time that we put in.

2            THE COURT:  Okay.  So what was it -- I'm sorry, I

3    missed -- what was the thing before -- the last thing you

4    mentioned was the contact information.  What was the thing

5    before that?

6            MR. LEON:  Regarding enterprise coverage and

7    individual coverage, and specifically inclusive in that would

8    be like the request for rental income documents showing the

9    payment from tenants to defendant during the relevant years.

10           THE COURT:  Okay.  What are the financial records

11   that you say you just received?

12           MR. MIZRAHI:  They're copies of checks.  So canceled

13   checks that were paid to the plaintiff, and then copies of

14   checks that were also paid to Perez, which is the part-time

15   live-in super.

16           THE COURT:  Okay.

17           MR. MIZRAHI:  Who currently works at the premises.

18           THE COURT:  But it's not the financial information

19   they're asking for in terms of checks from other tenants?

20           MR. MIZRAHI:  No, for sure not.  Those documents

21   were also requested but -- but no, those are not the documents

22   that would be responsive to the financial request.  Request

23   for financial records, excuse me.

24           THE COURT:  Okay.  So what about the checks and

25   other payments made by tenants?

1          MR. LEON:  The tax returns covers all the income

2      from the business received during around that period.  There

3      is a question about enterprise --

4          THE COURT:  Technically the tax returns cover the

5      income claimed by the company, not necessarily all the income

6      that was actually paid.

7          MR. LEON:  We believe that's the best and most

8      accurate representation of the business's financial history,

9      and the case law in these kinds of cases support that.

10          Courts look to tax returns and if there are any red

11     flags or glaring issues with those tax returns then we need to

12     look -- delve deeper into, you know, these specific checks.

13          But what plaintiff is asking for is check history

14     from tenants to a residential building over six years.  To my

15     knowledge and understanding, it's a small building.  They were

16     paying in cash, some were paying in check.

17          MR. MIZRAHI:  And money, right?

18          MR. LEON:  I think that we need to look to see the

19     tax returns, and I think the tax returns here are straight

20     forward.  I think the reason why we entered into a

21     confidentiality order is to -- is to prove all tax returns

22     that we have that were in our possession.

23          MR. MIZRAHI:  To be clear with --

24          MR. LEON:  To show that there is -- what the

25     financial status of this defendant looks like.  We don't have

1   these -- it's not a business.  It's not the kind of structured

2   enterprise that has records in their possession of these

3   rental statements that they're asking for.

4          It could be any -- it could be any form.  We have

5   payroll documents showing or relating to rent receipts.  That

6   can be a deposited -- my client who did pick up the checks

7   said they were -- some paid in cash.  Most paid in check.

8   Others paid in money order.

9          There's no way that they can have a paper trail for

10  payments made to plaintiff years ago, but they can't find

11  rental income during the same time period.

12          MR. MIZRAHI:  There is --

13          MR. LEON:  It's just -- and just one more thing for

14  context.  For the tax returns that were finally given recently

15  after confidentiality order was signed, I remember and you

16  please correct me if I'm wrong, but this is my recollection.

17          You told me the tax returns wouldn't have anything

18  that would be responsive of the $500,000 threshold issue or

19  the information I needed to prove my case.

20          And when I look at those tax returns, part of the

21  information reveals that at least for some of the time the

22  rental -- the gross rental income was over $500,000.  And

23  so --

24          THE COURT:  So why do we need anything more?  Isn't

25  that a --

1          MR. LEON:  Well, the reason we need -- the reason we

2     need --

3          THE COURT:  Why are you still contesting

4     jurisdiction then?

5          MR. LEON:  Well, one -- well, exactly, Your Honor.

6     But there's another aspect to that.

7          One, their firm said that there may be some

8     conflation of rental income there and it might not be what it

9     actually says.

10         And then lastly, they're not -- even if they didn't

11    contest the $500,000 threshold issue, they're still contesting

12    the other aspect of enterprise coverage, which would be

13    interstate commerce -- well, excuse me.  Interstate commerce.

14    They're contesting that.

15         So if my client was in fact collecting those checks,

16    I believe he's directly involved in interstate commerce,

17    including all the other stuff that he was doing, putting in

18    orders, et cetera, blah, blah, blah.  But none of that

19    information has been received.

20         So as a whole, defendants don't want to provide

21    certain documents because they think that the tax returns are

22    all inclusive.  But at the same time, maintain all their

23    defenses.

24         And something that's been a trend in this case is

25    that every time I've been told there's nothing more or this

18

1    won't have any responsive information, one, I get documents

2    after the fact.  And two, they're documents that show that

3    there may be other stuff out there.

4           So we're kind of stuck in this situation where we

5    are prejudiced in proving our case because they have all the

6    records and we don't have them.  I don't know who to subpoena

7    if they don't have it and they don't want to give it to me and

8    someone else has it.  I don't have any of that information.

9           THE COURT:  Okay.

10          MR. LEON:  Oh, I'm sorry, one last thing.  Regarding

11   those payroll records from the bank, one, there hasn't been a

12   single objection throughout this case that those records had

13   to be provided and it doesn't sound like despite some things

14   to the contrary being said here today, it doesn't sound like

15   overall that's their position that they don't have to give it,

16   but my client is entitled to see those pay records,

17   especially when defendant's counsel's boss told me that the

18   reason he had been ambiguous in responding to interrogatories

19   this last time around was because he wanted to get those pay

20   records from the bank to confirm that that information was

21   correct before making any representations.

22          So to say that those records aren't relevant when

23   they're influencing how those responses are going to be

24   issued --

25          THE COURT:  Well, I think we're talking about two

1    different sets of records.  You're talking about the payroll

2    records or the payments made to your client.  That's separate

3    from the financial records that are, you know, essentially

4    income from the -- you know, the rental income.

5              MR. LEON:  That's correct, Your Honor.

6              THE COURT:  I don't hear any objection from the

7    defendants about producing the first part, which is the

8    financial records pertaining to your client and payments made

9    to your client and the other employee/independent contractor,

10   whatever he is.

11             MR. MIZRAHI:  That's accurate, Your Honor.  All the

12   documents that were responsive that we had in our possession

13   we produced.

14             THE COURT:  Uh-huh.

15             MR. MIZRAHI:  Whatever documents that we didn't have

16   in our possession we were working to get.  These specific

17   records that they're requesting, they should be in possession

18   of.  If he was issued checks, he should have access to those

19   checks just as easily as we would.

20             We had asked for those documents --

21             THE COURT:  Maybe yes, maybe no.  Not everybody

22   keeps their payroll checks.

23             MR. MIZRAHI:  You're right.  Not everybody keeps

24   their payroll checks, but he would have the same effort -- he

25   would be able to make the same effort to work and get them

1    just as we would.  And we had made the same requests in our

2    document requests and they hadn't been produced.

3              MR. LEON:  And I honestly responded that we don't --

4              THE COURT:  I'm sorry, but if you're actually

5    employing somebody and paying them, you're required by the law

6    to keep those records.  The employee is not.  So there's no

7    reason why you would expect him to have the same access to

8    those records as you.

9              MR. LEON:  He doesn't have them.  That's the clear

10   response.

11             MR. MIZRAHI:  Our position is, is that we -- they

12   were not in our possession.  We had to make -- go through

13   formal banking procedures to go through the requests to obtain

14   them from the bank, and as soon as they were in our possession

15   we're prepared to make a disclosure.

16             MR. LEON:  Could I just ask one question, and this

17   is just for my understanding because maybe I'm talking and

18   going on and on for nothing.

19             Was this a request that was recently made to the

20   bank or was this made months ago?  When was it first

21   requested, because that to me is the big difference?  If you

22   made the request after I filed the motion to compel then I

23   think that should influence any decision on that, but you

24   know, that's just me and I'll leave it at that.

25             THE COURT:  How did you get these records from the

21

1    bank?

2           MR. MIZRAHI:  My client had to call his banking

3    professional.  The banking professional had to go through

4    their own internal procedures and processes to pull digital

5    copies that are scanned once checks are deposited through

6    ATMs, limit the search query to the relevant period to get

7    these two sets that they are requesting, issue copies, and

8    then send it to my client who then had to go and bring those

9    copies to my office.

10          THE COURT:  And how long that is --

11          MR. MIZRAHI:  These aren't copies that are in his

12   possession.  These aren't records that he has access to that

13   he can go and get himself.  He has to request them from the

14   bank, the bank has to provide them to them.  It's --

15          THE COURT:  Okay, look, as a technical matter your

16   client doesn't have physical custody of the records, but

17   they're his records and at his request the bank has to give it

18   to him.

19          So technically I think they are under his custody

20   and control, as opposed to plaintiff who can't get those

21   records even with a subpoena because there's private financial

22   information.

23          So you either need to get the records or you need to

24   give them a waiver that would allow them to get the records

25   themselves if they choose to do that.

22

1          I don't particularly care which way you go but you

2     have to do one or the other because right now you're the only

3     ones that can get access to those records.

4          MR. MIZRAHI:  We understand, Your Honor.  And again

5     once -- I just received them.  I'm looking over them over the

6     weekend.  I'm prepared to provide -- to give them over --

7          THE COURT:  Uh-huh.

8          MR. MIZRAHI:  -- as soon as I mark any information

9     that needs to be marked as confidential.  This isn't a case

10    where we're withholding anything.  As soon as I receive them,

11    I'm prepared to turn them over.

12         THE COURT:  But the other financial records they're

13    asking for in terms of rental income is important if you're

14    contesting, you know, FLSA jurisdiction on that basis.

15    Especially if you've got a case where the tax records show,

16    you know, income that's at or close to that threshold.

17         MR. MIZRAHI:  We, as an initial matter, would like

18    to object to opposing counsel's characterization of the

19    procedural posture related to the discovery of this case.  I

20    know that there was a long soliloquy and there are some issues

21    regarding accuracy of his description of our position.

22         So with regard to the financial records I'm going to

23    enter them as coverage threshold.  What he's requesting is

24    every single document related to enterprise coverage

25    liability.  But sitting down here today I think he's asking

1    that he needs to establish whether or not his plaintiff was

2    engaged in interstate commerce.

3            THE COURT:  Uh-huh.

4            MR. MIZRAHI:  I think the more reasonable thing to

5    do here is provide a sample set of one or two types of

6    documents that can answer his question yes or no.  I think

7    what he's asking for is over-broad, it's unrelated to the

8    issue he's trying to identify, and I think that it can easily

9    be answered in a deposition.

10           He has not been pushing forward to depose my client

11   and even though deposition notices had been taking, they've

12   been passed.  They hadn't been followed.

13           We think that if he has any -- if he'd like to see

14   representative samples of checks that he believes qualifies

15   being engaged in interstate commerce, I can get you know,

16   sample selections of those checks.  But what he's asking for

17   is over-broad and I don't think it's narrowly tailored to the

18   information that he's seeking.

19           MR. LEON:  I did provide --

20           THE COURT:  What is the theory that you have, that

21   if he --

22           MR. LEON:  The --

23           THE COURT:  He's collecting these rent checks.

24           MR. LEON:  Right.  Collecting rent.

25           THE COURT:  And the theory is what?  That if any of

24

1    those rent checks are from an out-of-state bank that somehow

2    makes it interstate commerce?

3          MR. LEON:  Right.  My understanding is that the

4    checks come from various banks, that he would also collect

5    money orders.

6          And I believe that along with just his actual

7    functions at the job in terms of making delivery -- excuse me,

8    putting in orders from out of state, that at least there's a

9    colorful argument, and I believe that's enough to at least

10    beat a summary -- motion for summary judgment and get FLSA

11    jurisdiction in this case, because if they're right on the

12    other individual working or performing services for the

13    building not being an employee, that is the other argument I -

14    - the other back up I have to make.

15          THE COURT:  Okay.  I'm not saying whether I agree

16    with your theory or not, but I do think that a sample of the

17    checks and money orders would accomplish what you need to you

18    know, move forward with that theory.  It doesn't sound to me

19    like they're contesting the factual basis of your theory, just

20    the actual theory itself.

21          MR. LEON:  If I could just make one quick note,

22    because I don't want to lose sight of the one particular

23    point?  Yes, there was a general request that said documents

24    proving, showing, relating to interstate commerce, individual

25    commerce --

25

1          THE COURT:  Uh-huh.

2          MR. LEON:  Excuse me.  There was also a specific

3     request for the relevant years.

4          THE COURT:  Uh-huh.

5          MR. LEON:  Rent received from defendant -- from --

6     that defendant received from his tenants which presumably my

7     client was picking up and dealing with that entire time

8     because he was the one in charge of collecting that.

9          THE COURT:  Uh-huh.

10         MR. LEON:  So we did narrowly tailor that.  And

11    there were responses saying, look at what we provided you

12    with.  It's like 200 documents, none of which are responsive,

13    without ever indicating that they were withholding documents

14    as they clearly are.

15              So obviously we'll defer to whatever the Court is

16    going to decide, but the fact that these responses have been

17    issued this way for six months now, I believe that defendants

18    should have to give more than just sample, but give at least

19    the relevant FLSA period for that period of time, the rent

20    received from their tenants during that time period.

21              I'm not asking for the full six years.  I'm asking

22    for the relevant three years that I need to prove my FLSA

23    case.  I believe if they had -- if they had said to me, we're

24    willing to give you a sample two or three months ago, we might

25    have resolved this.

26

1          But now, after we file a motion, now it's a sample

2     would be good and we should be rewarded for not having given

3     you everything or giving you a legitimate objection before.

4     That's the concern that we have.

5          THE COURT:  Okay.  Your client doesn't keep any

6     records of any of this stuff?

7          MR. MIZRAHI:  This is a -- this is --

8          THE COURT:  These are just bank records that

9     basically you're going back to piece together?

10          MR. MIZRAHI:  This is a case where we're dealing

11     with an individual who owns, I believe it's a seven or an

12     eight-unit apartment complex in Jackson Heights Courts.

13          MR. LEON:  Thirty-three.

14          MR. MIZRAHI:  Thank you.  It's an unsophisticated

15     landlord.  He works for the Department of Education.  It's not

16     an enterprise that has any formal bookkeeping or procedures.

17     It's the most basic sort of record keeping that you can have.

18          So we've made it abundantly clear to my client that

19     he needs to produce relevant documents that are in his

20     possession, and we've -- he knows that he needs to produce

21     documents that he has.

22          And we've made it clear to opposing counsel that

23     anything that we haven't produced that we need to that we're

24     in possession of and that we're making sure our client is

25     giving us, supplementing on an immediate basis.

1      So this isn't a case where we're withholding

2  anything that we were previously not in possession of.  Or,

3  I'm sorry, that we were withholding anything that were in

4  possession of previously, but the characterization of why

5  we're objecting to these objections is inaccurate, and the

6  requests themselves are incredibly broad.

7      So to be able to make requests for all documents

8  relating to interstate coverage, or all documents relating to

9  rent received, when he has answers to those questions in the

10 form of tax returns, in the form of other documents that have

11 been produced in the very beginning of this case, it's hard to

12 substantiate a claim for prejudice.  It's hard to substantiate

13 a claim that he's unable to have been prosecuting this case

14 accordingly.

15     We believe that information that he's seeking can be

16 obtained through other means that are not as burdensome and

17 are not as over-broad.  And if he's -- when we have been

18 producing documents it's been when he's able to identify

19 specific selections that we're able to produce.

20     MR. LEON:  That's not correct.

21     MR. MIZRAHI:  It's not the case that we're not

22 producing anything and we're not ready to move forward.  We --

23     MR. LEON:  The request never changed.  I'm sorry to

24 interrupt.  The request never changed.  The apartment complex,

25 according to my client, is in excess of 30 apartments.

1              To say that it's a seven -- seven resident or seven

2      apartments, that's just not -- I guess that's something else I

3      have to look into for a deposition, but this is information --

4      the request had never been narrowly tailored.  I have -- it

5      had never been further narrowly tailored.

6              We've had requests and we said, you owe us this.

7      Oh, okay, okay, we'll get it to you.  A week or two weeks

8      later I get it and I say, it's still deficient, get it to me.

9      Okay, okay.  There's never been a, we narrow it to this

10     particular time period.

11             But for now, for the purposes of resolving this, the

12     rental income thing we'll -- right now I think it says for the

13     entire time my client worked there, which is like 2009 to the

14     present.  Fine.  We'll narrow it to the FLSA period.  The

15     relevant -- which I believe is 2014 to 2017.

16             And just to further hit one point home, the tax

17     returns don't have copies of a single check.  They don't

18     indicate what banks they came from.  They don't indicate where

19     the money orders came from.

20             There is no other way aside from viewing those

21     checks that we can actually make out where those things are

22     coming from, where they're going to, what their role in

23     interstate commerce would be.  So there's actually a huge

24     prejudice.

25             There's no other way that we can get those

29

1 particular records, and I'm positive that if -- well, I'm sure

2 defendants have some paper trail of those records.  And when I

3 do a deposition of defendant, he's -- I mean, I believe he's

4 going to tell me that he did at some point in time deposit a

5 rental check.

6    And so what, we're going to say he doesn't have it,

7 or he just hasn't been willing to provide it up until this

8 point?  I think we should get those relevant FLSA periods

9 because their objections -- the objection that they're voicing

10 right now, which they have not voiced three months ago, four

11 months ago, I believe the issue would be waived, just because

12 of the time that we've had to wait.

13    If they would have told me this, I would have worked

14 with them.  But they're saying it now, after I've invested all

15 this time and after I sincerely distrust the sample that I

16 would be getting.

17    THE COURT:  All right.  So, I think you're going to

18 have to request from the bank checks or money orders deposited

19 during the period 2014 to 2017, and then you know, you can go

20 through them and take out anything that's not rental income.

21    You know, if you -- you know, obviously -- I assume

22 it's a business account, but maybe not.  But if you deposited

23 things that were something other than rental income you can

24 take those out before you produce it.

25    MR. LEON:  That's for me, Your Honor, correct?

30

1            THE COURT:  Uh-huh.

2            MR. LEON:  I would just ask that defense could give

3       me any identifying information that I need so that I know what

4       bank or what account to subpoena.

5            THE COURT:  No, no, no, they're going to give you --

6            MR. LEON:  Oh, I'm sorry.

7            THE COURT:  They're going to get the records from

8       the bank --

9            MR. LEON:  Oh, I'm sorry, Your Honor.  I

10      misunderstood.

11           THE COURT:  -- and give them to you.  Yeah.

12           So you'll get the, you know, the records of the

13      deposited checks or money orders.

14           MR. MIZRAHI:  Respectfully, Your Honor.  Again, I

15      think the basis of the request is to establish whether or not

16      the plaintiff was engaged in interstate commerce.  Is that

17      accurate?

18           MR. LEON:  That is a legal theory.  Yeah.

19           MR. MIZRAHI:  If that's the basis for the request

20      wouldn't it be more resource effective and more time effective

21      for all parties if we provide a limited set rather than

22      records that are requesting over the span of three years, that

23      can answer that question one way or another?

24           MR. LEON:  I would just respond -- say -- refer you

25      back to everything I said for the past five minutes and why I

1    have an issue with that.

2            THE COURT:  I mean, are you -- are you -- I mean

3    look, you have all these records, or your client should know.

4    I mean, you understand what their legal theory is.  If you

5    concede the point, then this is an exercise in mootness.

6            MR. LEON:  I don't answer it if you conceded that,

7    absolutely.

8            MR. MIZRAHI:  I don't believe that they're relevant

9    to show engaging in interstate commerce.  I think that you

10   need to establish whether the individual themselves was

11   proactively taking steps to facilitate transactions over state

12   lines.

13           And what he's asking for are copies of checks that

14   have names of banks that do business out of state.  I don't

15   think those two things are the same.

16           MR. LEON:  And I didn't ask for checks that have

17   names with banks out of state.  I said I believe those checks

18   will have names of banks that are from out of state.  The

19   request was sufficiently broad, but enough -- with enough

20   specificity to prove the claim.

21           I'm asking for all checks, all the --

22           MR. MIZRAHI:  But how did he handle those checks?

23           MR. LEON:  -- all proof of rental income or receipt

24   of rent from the defendants during the relevant years.

25           THE COURT:  Again, I don't think there's a factual

32

1    dispute here.  There is no -- look, your client received

2    rental checks or money orders from people and either deposited

3    them himself or, you know, gave them to the owner to deposit

4    them.

5              MR. LEON:  That's correct.

6              THE COURT:  Right?

7              MR. MIZRAHI:  His client would go door to door,

8    collect checks --

9              THE COURT:  Yeah.

10             MR. MIZRAHI:  -- and then give them to landlord to

11   deposit.

12             THE COURT:  And the landlord would deposit them.

13   Okay.

14             MR. MIZRAHI:  This is his -- that's not engaging in

15   interstate commerce.

16             THE COURT:  Okay.

17             MR. MIZRAHI:  I don't think there's any case law

18   that supports that collecting --

19             THE COURT:  But that's my point.

20             MR. MIZRAHI:  -- checks is --

21             THE COURT:  If the only objection you have is to the

22   legal theory then why don't you just concede what he's saying?

23             MR. MIZRAHI:  We're just asking that we limit it so

24   we don't have to make requests for three years from a bank

25   that's going to take at least 30 -- 25 days to give us three

1    years that we have to then go back and pull for each specific

2    production that they give for each month that only limit it to

3    the set.  I'm asking that we give you a sample set that can

4    answer your question objectively --

5              MR. LEON:  I'd rather wait for --

6              MR. MIZRAHI:  -- one way or another.

7              MR. LEON:  I'd rather wait 30 days to get what's

8    responsive, rather than be here in 45 days disputing that the

9    sample is not accurate or complete, which in light of the

10   history of this case I would have already reasonably walking

11   in that there might not be complete information.

12             And I would absolutely compare it to the tax returns

13   and if there is a discrepancy, which with all due respect I

14   believe there will be, then I'll be back here saying I don't

15   believe it's complete, Your Honor, we should be entitled to

16   look at all of it, and then we're wasting twice the time.

17             THE COURT:  Look, just ask the bank for the records.

18   It's just that it's the checks and money orders deposited

19   during 2014 and 2017.  It will take the bank as long as it

20   takes the bank to get it.

21             MR. LEON:  2015 to 2017, Your Honor.

22             THE COURT:  I'm sorry, 2015 and 2017.

23             MR. MIZRAHI:  Yes, Your Honor.

24             THE COURT:  You know, like I said, if you're willing

25   to stipulate that you know, his client handled checks from out

1    of state banks or whatever it is you're hoping to find, then I

2    think you can dispense with all of this stuff.

3              But if you're not going to stipulate to it then I

4    think he's entitled to the information, even if, you know,

5    it's an unproven legal theory.

6              At the end of the day you can argue the legal theory

7    without fighting over the factual situation if there's nothing

8    to fight over.  But I don't know what's in those records.  You

9    do, or your client does.

10             MR. MIZRAHI:  Yes, Your Honor.

11             THE COURT:  So either produce the records or give

12   them the stipulation.

13             All right.  So what date can we produce this stuff?

14             MR. MIZRAHI:  We're going to make the request and

15   we're going to produce them as soon as they're in our

16   possession.  I'd say that we need at least 30 days from the

17   bank.  We're going to obviously request them on an expedited

18   basis, but I think 30 days should be sufficient.

19             THE COURT:  All right.  So I'll give you to May 3rd.

20             The current discovery deadlines?

21             MR. LEON:  I believe it's a month from this week,

22   Your Honor.

23             THE COURT:  Yeah, it's April 26th.  So assuming you

24   got these records by May 3rd and you still have to

25   depositions, so how much longer do we need for discovery?

1           MR. LEON:  I don't know, Your Honor, because there's

2     also the other two witnesses.  I now want to depose the

3     accountant for the defendant that was recently disclosed --

4           THE COURT:  Okay.  Well, they're giving you their

5     contact information for those two.

6           MR. MIZRAHI:  He has the contact information

7     already, Your Honor.

8           MR. LEON:  I'm sorry --

9           THE COURT:  About those witnesses?

10          MR. LEON:  -- for Selso Perez, I definitely don't

11    have his.  Like full contact information.

12          MR. MIZRAHI:  Did you not call him last week?

13          MR. LEON:  I don't have his information.

14          MR. MIZRAHI:  Did anyone from your office call him

15    last --

16          MR. LEON:  I don't have it.

17          MR. MIZRAHI:  -- week?

18          MR. LEON:  I don't have his address where I can

19    serve him with a subpoena.  Do you?  He lives in your

20    client's --

21          MR. MIZRAHI:  We can give him -- we can give the

22    information if it already hasn't been provided, Your Honor.

23    That's fine.

24          THE COURT:  Whatever you have, give him the contact

25    information for those two witnesses.

1          MR. MIZRAHI:  That's -- yes, Your Honor.

2          MR. LEON:  Thank you, Jason.

3          THE COURT:  I mean, if he's going to have to

4     subpoena him, you've got to give him the address.

5          MR. MIZRAHI:  Yes, Your Honor.

6          THE COURT:  So how many depositions are we talking

7     about total?

8          MR. LEON:  From plaintiff's side, two to three.

9          THE COURT:  Okay.  How much longer do you need?

10          MR. LEON:  Assuming that we get the records within -

11     - by May 3rd and we can review it, I'd say probably another

12     three months, just because I'm coordinating with other

13     people's schedules that aren't apparently under the

14     defendant's counsel's authority or command, so I don't know

15     what their schedules are going to look like.

16          THE COURT:  So August?

17          MR. MIZRAHI:  That's fine, Your Honor.

18          THE COURT:  August 2nd?  That's a little more than

19     three months.

20          All right.  So deadline for completion of discovery

21     is August 2nd, deadline for beginning dispositive motion

22     practice will be September 2nd, and do we want to schedule a

23     settlement conference at some point?

24          MR. LEON:  I think we should wait until after this

25     part has been moved along a little bit and we're confident

1  that -- as soon as we have all the records and we believe we

2  know what we need to know.

3          THE COURT:  Uh-huh.

4          MR. LEON:  I'm always happy to having the settlement

5  discussion despite whatever may have happened in the case.

6          THE COURT:  All right.  Why don't you go forward

7  then with discovery, and you'll let me know when it would be

8  productive to have a settlement conference?

9          MR. MIZRAHI:  We would like -- we welcome the

10  opportunity to have a settlement conference that's presided

11  over by a magistrate judge.  Either yourself or another

12  magistrate -- or a magistrate judge.

13          THE COURT:  I leave it up to you.  I can schedule

14  something tentatively now if you want.

15          MR. MIZRAHI:  I think that would be a good idea, if

16  we have a -- just the holding date.  Then we would be able to

17  use that as a --

18          THE COURT:  How about July?

19          MR. LEON:  I don't mean to be the naysayer on all

20  these issues, but I'd rather wait until we're kind of more

21  along with the depositions and all that because --

22          THE COURT:  Okay.

23          MR. LEON:  -- I don't know if we're actually going

24  to be there.

25          THE COURT:  All right.

1        MR. LEON:  I'd rather be there and then let the

2   Court know.

3        THE COURT:  That's fine.

4        MR. LEON:  And obviously our preference would be,

5   Your Honor, as I like to tell my colleagues, my favorite Judge

6   Tiscione story is Your Honor taking an iPad out to do legal

7   research while the attorneys are disputing the legal issue.

8   So I'm definitely very partial.

9        Your Honor, if I could just get clarification on two

10  of the issues that we discussed earlier in terms --

11       THE COURT:  Sure.

12       MR. LEON:  -- of what the Court's ruling or decision

13  is on it?

14       In terms of all the responses, in response to

15  document requests from defense, their latest revisions, I

16  think the third, where they object and without waiving those

17  objections, and pursuant to those objections, respond

18  providing documents but without indicating whether they're

19  withholding documents.  They need to revise those to indicate

20  whether they're withholding documents.

21       THE COURT:  Yeah, I think they said they were not,

22  so they just need to -- when they submit the other responses

23  they can just make it clear that they're not withholding any

24  documents.

25       MR. LEON:  And then -- well, actually and -- sorry.

1    And in along those lines with interrogatories, when we're

2    asking about salary and just something that is specific.

3          My understanding is that my client was paid pretty

4    much the same every single week, but I just want to make sure

5    that I understand what defendant's position is on what they

6    paid him.

7          And again, especially if they're going to have

8    records of what they paid him to be able to say here is what

9    we paid him and for what periods of time.

10          THE COURT:  Well, I think you're giving him the

11   payroll records, right?

12          MR. MIZRAHI:  We're going to give him payroll

13   records.  It's going to answer the question.  We've already

14   answered the question.  Payroll records are going to answer

15   the question conclusively, so he has it in front of them.

16          MR. LEON:  Well, so here's the reason why I would

17   disagree with that, because even by their own responses they

18   said they paid my client in cash and check.

19          THE COURT:  Yeah, so the checks aren't going to have

20   everything.

21          MR. LEON:  Right.  So for that reason, I can't just

22   rely on the record.

23          THE COURT:  I don't think it's too much to ask for

24   you to tell him how much you paid his client.

25          MR. MIZRAHI:  We -- the cash amount and the check

1    amount I think were the same.  I think he would cash the

2    checks, or the checks that were -- he received the check, I

3    believed for $300 per week.

4            The check was either cashed, so the cash deposit

5    which he'd then withdraw, or they were canceled and then he

6    paid him in cash.  There wasn't -- it's not the case that it

7    was a split amount, but we'll produce it.

8            MR. LEON:  So --

9            THE COURT:  I think it's very simple.

10           MR. MIZRAHI:  Yeah.

11           THE COURT:  Just give him an actual physical amount

12   instead of saying --

13           MR. MIZRAHI:  Sure.  Sure.

14           THE COURT:  -- referencing everything else.  I mean,

15   if you paid him $300 a week, or $600 a week, or whatever it

16   is, just say that.

17           MR. MIZRAHI:  I believe it's in the responses

18   already but we'll -- I believe it's in the responses already

19   but we'll answer it happily.  That's fine.

20           THE COURT:  Just answer it.

21           MR. MIZRAHI:  Sure.

22           MR. LEON:  Just one thing.  And we would just ask

23   for --

24           THE COURT:  Just a number.

25           MR. LEON:  -- a revised verification with that.

41

1    That's it.

2              MR. MIZRAHI:  Sure.

3              THE COURT:  Yeah, he's going to have to do that

4    anyway for all the new stuff.

5              All right.  You'll let me know when you want to come

6    in for a settlement conference.

7              MR. LEON:  And, Your Honor, I would be remiss and

8    unfortunately I have to bring the issue up again and I'll

9    obviously defer to the Court's discretion and better judgment

10   on it, but our request for fees and costs for having to be

11   here and writing this motion and having this 45-minute long

12   conference on issues that the parties could have and should

13   have resolved among themselves, but because of what we would

14   call willful noncompliance we were forced to do and partake

15   in --

16             THE COURT:  I don't know that I would go as far as

17   saying willful noncompliance, but I definitely don't want this

18   dragging on anymore.

19             I'm not imposing sanctions right now, but if you

20   don't meet the May 3rd deadline that's going to change.  And

21   the next time there's an issue I strongly suggest the parties

22   pick up the phone and talk to each other because a lot of this

23   stuff is really not something that should require this much

24   time to resolve.

25             All right.  Good luck.

42

1          MR. LEON:  Thank you, Your Honor.

2          MR. MIZRAHI:  Thank you, Your Honor.

3      (Proceedings concluded at 11:31 a.m.)

4

5

6   I, CHRISTINE FIORE, Certified Electronic Court Reporter and

7   Transcriber, certify that the foregoing is a correct

8   transcript from the official electronic sound recording of the

9   proceedings in the above-entitled matter.

10

11

12   *Christine Fiore*

13

14   _____        May 15, 2019

15      Christine Fiore, CERT

16

17

18

19

20

21

22

23

24

25