# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
Case No. 1:17-cv-06127-ILG-ST
- - - - - - - - - - - - - - - - - - - - - - - x

CARLOS CHINCHA,

                  Plaintiff,

      - against -

MANOJKUMAR PATEL, in his individual and
Professional capacities,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - x
                  April 10, 2020
                  9:27 a.m.

                  47-34 39th Street
                  Sunnyside, New York 11104

    VIDEOCONFERENCED DEPOSITION of MANOJKUMAR
PATEL, the Defendant in the above-entitled action,
held at the above time and place, taken before
Melissa A. Diaz, a Notary Public of the State of New
York, pursuant to the Federal Rules of Civil
Procedure, Notice and stipulations between counsel.


               *    *    *    *

```
 1
 2
 3   A P P E A R A N C E S :
 4
 5   LAW OFFICES OF WILLIAM A. CAFARO
             Attorneys for Plaintiffs
 6           108 West 39th Street, Suite 602
             New York, New York 10018
 7
     BY:     LOUIS M. LEON, ESQ. (Via Videoconference)
 8
 9   LEVIN-EPSTEIN & ASSOCIATES, P.C.
             Attorneys for Defendants
10           420 Lexington Avenue, Suite 2525
             New York, New York 10170
11
     BY:     JASON MIZRAHI, ESQ. (Via Videoconference)
12
13
14
15
16
17              *      *      *      *
18
19
20
21
22
23
24
25
```

1
2              S T I P U L A T I O N S
3           IT IS HEREBY STIPULATED AND AGREED, by and
4    among counsel for the respective parties hereto,
5    that the filing, sealing and certification of the
6    within deposition shall be and the same are hereby
7    waived;
8         IT IS FURTHER STIPULATED AND AGREED  that all
9    objections, except as to form of the question, shall
10   be reserved to the time of the trial;
11         IT IS FURTHER STIPULATED AND AGREED that the
12   within deposition may be signed before any Notary
13   Public with the same force and effect as if signed
14   and sworn to before the Court.
15
16
17                   *     *     *     *
18
19
20
21
22
23
24
25

Page 173

1       M. PATEL
2  open that up, you think that would help refresh your
3  memory?
4       A    Yeah.
5       Q    So maybe later on we'll do that.
6            But 2014 and 2015 from what you remember
7  did your rental, gross rental, revenues change at
8  all?  Like was it different from 2014 to 2015?
9       A    I have no idea -- recall.  I don't recall
10 anything.  It's so hard to remember.
11      Q    Fair enough.
12      A    I can't remember what I ate yesterday for
13 dinner.
14      Q    I'm in the same life with this COVID.  I
15 don't even know what date it is.
16           MS. LEON:  I just want to make a statement
17      for the record.  We requested tax returns in --
18      this is for your attorney.  This is not meant
19      for us to get into an argument or a debate.  We
20      made a request for all tax returns during the
21      relevant years, which included 2014, 2015, 2016
22      and 2017.  We never got tax returns for 2014.
23      I was led to believe during the course of
24      discovery that if we didn't give it to you, we
25      don't have it.

Page 174

1        M. PATEL
2        So based on what Mr. Patel has indicated
3   today, that he believes that he may have filed
4   2014 tax returns, then I would ask for those
5   returns to be disclosed.  They should have been
6   disclosed already, but I want to put that
7   request on the record and obviously if we don't
8   get it promptly the way we should have gotten
9   it eight, nine months ago, a year and a half
10  ago when we first requested this or two years
11  ago, then obviously we'll have to take
12  necessary action.
13       But I just want to place that on the
14  record and ask you, Jason, are you aware if the
15  2014 tax returns were turned over?  Because if
16  I'm wrong, I'm willing to take it off the
17  record.  But do you know if the 2014 tax
18  returns were ever turned over?
19       MR. MIZRAHI:  I think we should speak
20  privately off the record about it.
21       MS. LEON:  Just a quick statement.  It
22  either has been turned over or hasn't.
23       MR. MIZRAHI:  I don't recall right now.
24  So we should talk about it later after the
25  deposition.

M. PATEL

MS. LEON: So then in light of that slight delay tactic, if it's not turned over, we will be moving to compel because it should have been turned over already. Presumably the tax returns say the same stuff that the other years say. But I can't assume that. I can't commit malpractice by not getting the documents that I need to prove my case. So I respectfully ask that you promptly turn them over. If we don't get a chance to talk, that's not an excuse to not turn them over because they are over a year overdue. I just want that on the record, and I'll continue asking your clients questions. Please be guided accordingly.

MR. MIZRAHI: For the record, I acknowledge your representation. If you'd like to make your request in writing as well as the previous request for documents, I'd be happy to help you.

MS. LEON: Jason, the transcript is a written record. And it's being sent to you. So you are on notice and it's in connection with a prior request. So even if I send you a written request later today or during a break,

1              M. PATEL

2     which I can easily do or not, does not mean

3     that you get to hold off from complying because

4     you didn't get that request.  You've been put

5     on notice.

6             MR. MIZRAHI:  I have no absolutely no idea

7     what previous request you're referring to.

8             MS. LEON:  There's only been one record

9     document request, Jason.

10            MR. MIZRAHI:  I won't engage in this with

11    you right now.

12            MS. LEON:  There's been at least three

13    motions to compel in connection with you and

14    your boss not disclosing documents when you

15    were supposed to and us going to three

16    conferences because of it.  I'm not going to

17    waste any more time on this.  I want to get

18    back to questioning your client, but you're on

19    notice that you can't rely on the fact that you

20    don't get an e-mail right now from me.

21            MR. MIZRAHI:  The 2014 tax returns are in

22    the Dropbox folder.

23            MS. LEON:  And I'm looking at it right

24    now.  I looked at it just a few minutes ago and

25    it wasn't there.  If that's the case, download

M. PATEL

it and e-mail it to me right now, if that really is the case. I'm looking at it right now. And I will be willing to say I'm wrong if I am wrong, but I don't see anything regarding 2014 tax returns. Just e-mail it to me and I'll gladly look at it.

Is it your position that it's been produced? Because if it is in the Dropbox, I'll look at it during the break. And if I'm wrong, I'll correct myself.

MR. MIZRAHI: Yes. It's right there. Look at it.

MS. LEON: All right. I'll take a look at it over the break and if I have to fix the record, I'll fix the record.

Q Sir, Mr. Patel, do you remember that there was a document that you produced during the course of this case that I believe you labeled or someone labeled as Mr. Carlo, adult productive services ineligibility? Do you know what I'm referring to, Mr. Patel?

A I have to look at the documents.

MS. LEON: Let's do that to make it easier.

Page 193

1                    M. PATEL
2       A     Yeah.  Because at that time as a human, as
3   a person, I tried to give him a chance to improve
4   his health.
5       Q     So I understand that you say you were
6   being considerate to the fact that he was a person
7   with problems and that's why you didn't fire him
8   earlier, right?
9       A     Yeah.  That was the problem.
10      Q     I'm sorry?
11      A     Can you rephrase that?
12      Q     Sure.  Is it correct to say that the
13  reason you're saying that you didn't fire him before
14  September of 2017 is because you felt like you were
15  being a human and you were empathizing and giving
16  him the opportunity to be better and you didn't want
17  to take advantage of his medical situation?
18      A     No.  That was the main reason.  Yes.
19            THE WITNESS:  If you don't mind, can we
20      take a break because I'm getting tired and
21      exhausted.
22            MS. LEON:  Give me a few more minutes and
23      we'll take a break.
24            THE WITNESS:  Because my brain need some
25      energy.

1   M. PATEL
2   MS. LEON: My brain is operating on coffee
3   now.
4   THE WITNESS: I don't drink coffee.
5   MS. LEON: I don't envy you.
6   Could you read back the last question and
7   answer?
8   (The requested portion was read.)
9   MR. MIZRAHI: Mr. Patel, are you okay?
10  THE WITNESS: Yes.
11  MS. LEON: I'm just asking for five
12  minutes because I've already started a
13  question and you heard me start the question
14  and you started -- I'm going to finish asking
15  my question. Once that question is done --
16  MR. MIZRAHI: Excuse me --
17  MS. LEON: No, Jason, please don't do
18  this. We're going to be here an hour or two
19  hours longer at this rate. I'm asking for five
20  minutes. Just let me finish my question.
21  MR. MIZRAHI: Mr. Patel, if you need a
22  break, just let me know.
23  THE WITNESS: Okay.
24  MR. MIZRAHI: Thank you.
25  MS. LEON: Mr. Patel, you remember that at

```
                                                    Page 264
 1                       M. PATEL
 2       A    Are you allowed to make any comment on the
 3  record that you want?
 4       Q    I'm not recording anything.
 5       A    You said how convenient, right?
 6       Q    Convenient, yes.  Unless you want me to --
 7       A    Convenient for you, right?  If something
 8  is convenient for you, you can ask anything, right?
 9       Q    Yes.  I'm an attorney.  I'm the one
10  deposing you.  I get to ask --
11       A    Yeah.  Yeah.  I know.  This is what --
12       Q    I have reasonable hours left of deposing
13  you.  So the more you argue, the longer we're going
14  to take with this.
15       A    That's fine.  Let's take 10 years.
16       Q    Sure.  You're the one paying on an hourly
17  basis.  Not me.
18       A    I'm not worried about that one.
19       Q    Of course you're not.  I'm glad to know
20  that.  So I'll continue.
21            MR. MIZRAHI:  Let's continue.
22       Q    I already know what I need to know
23  about --
24            MR. MIZRAHI:  This is an improper exchange
25       for the record.
```

Page 322

1                    M. PATEL

2       A    I can give it to you.

3       Q    I do want it.  That's --

4       A    I will give it to you.  Stop.  And go for

5    it.  Don't show me a finger, first of all.

6       Q    I'm not --

7       A    That's what you're doing.  You don't point

8    a finger to anyone.

9       Q    I'm going to continue to talk.

10      A    You keep showing your finger.

11      Q    It's my index finger.

12      A    Doesn't matter.  It's a finger.

13      Q    Sir, I'm not --

14      A    You are insulting me.

15      Q    You're a witness and I'm going to continue

16   asking questions about --

17      A    You are insulting me.

18      Q    How am I insulting you, sir, by asking you

19   questions you don't want to answer?  I'm going to

20   finish because I'm not going to continue wasting

21   time.

22      A    Go ahead.  You already wasted eight hours.

23      Q    That notebook that you just showed me for

24   the very first time and your attorney never

25   mentioned to me at any point in time in almost three

|   |   |
|---|---|
|   | Page 352 |

1              M. PATEL

2          THE WITNESS:  You don't need to say the

3     same thing, sir.

4          MS. LEON:  Five minutes is all I'm giving

5     you because --

6          THE WITNESS:  I have a right to --

7          [Simultaneous speaking.  Inaudible.]

8          MS. LEON:  Mr. Patel, calm down.  Stop

9     yelling.

10         ==THE WITNESS:  No.  The reason is you are==

11    ==thinking by harassing somebody like this with==

12    ==the way you talk and you show me your finger --==

13         MS. LEON:  Okay, Mr. Patel.

14         THE WITNESS:  You can record it and put it

15    online.

16         MS. LEON:  Jason, five minutes and then --

17    we started at 9:30, as you aptly reminded me

18    over and over --

19         THE WITNESS:  You did the same thing over

20    and over.

21         MS. LEON:  My portion --

22         THE WITNESS:  If you want to keep going on

23    the record, then that's fine.

24         MS. LEON:  6:05 is the cut-off --

25         THE WITNESS:  Jason, finish it because