1   UNITED STATES DISTRICT COURT

2   EASTERN DISTRICT OF NEW YORK
    ---------------------------------------------X
3   CARLOS CHINCHA,

4           Plaintiff,

5       -against-      Case No: 1:17-cv-06127

6   MANOJKUMAR PATEL, in his individual and
    professional capacities,
7
            Defendant.
8   ---------------------------------------------X

9

10                  April 23, 2020

11                  11:01 a.m.

12

13          VIDEOCONFERENCE DEPOSITION of

14   CARLOS CHINCHA, taken pursuant to Notice,

15   before Toni Freeman Greene, a Court Reporter

16   and Notary Public of the State of New York.

17

18

19

20

21

22

            ELLEN GRAUER COURT REPORTING CO. LLC
23            A U.S. LEGAL SUPPORT COMPANY
            126 East 56th Street, Fifth Floor
24             New York, New York 10022
                  212-750-6434
25               REF:  305065

```
 1    A P P E A R A N C E S :

 2

 3    LAW OFFICES OF WILLIAM CAFARO

 4    Attorneys for Plaintiff

 5         108 West 39th Street

 6         Suite 602

 7         New York, New York 10018

 8    BY:   LOUIS M. LEON, ESQ.

 9         (212) 583-7401

10         LLeon@Cafaroesq.com

11

12

13    LEVIN-EPSTEIN & ASSOCIATES, P.C.

14    Attorneys for Defendant

15         420 Lexington Avenue

16         Suite 2525

17         New York, New York 10170

18    BY:   JASON MIZRAHI, ESQ.

19         (212) 792-0046

20         jason@levinepstein.com

21

22

23

24

25
```

1   A P P E A R A N C E S (Cont'd):

2

3   ALSO PRESENT:

4        CHRISTINA DIAZ, Spanish Interpreter

5        DEAN MCCONKEY, Spanish Interpreter

6        SHIRLEY SANCHEZ

7        MAGISTRATE JUDGE STEVEN L. TISCIONE

8        ANDY ZAMPELLA

9

10

11  ** ALL PARTIES APPEARING VIA VIDEOCONFERENCE **

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   ----------------- I N D E X -----------------

 2   WITNESS              EXAMINATION BY              PAGE

 3   CARLOS CHINCHA    MR. MIZRAHI                      6

 4                     MR. LEON                       228

 5

 6

 7   --------- PORTIONS MARKED FOR COUNSEL ---------

 8            PAGE               LINE

 9             18                 23

10             93                  2

11

12

13   -------------- E X H I B I T S --------------

14   DEFENDANT   DESCRIPTION                         PAGE

15   Exhibit A   Complaint                            130

16   Exhibit B   Superintendent Responsibility        150

17   Exhibit C   Text Message String                  184

18   Exhibit D   Notice of Disability                 187

19               Determination

20

21

22           (EXHIBITS TO BE PRODUCED)

23

24

25
```

```
1          P R O C E E D I N G S

2          THE REPORTER:  The attorneys

3     participating in this deposition

4    acknowledge that I am not physically

5    present in the deposition room and that I

6    will be reporting this deposition

7    remotely.

8          They further acknowledge that, in

9    lieu of an oath administered in person, I

10   will administer the oath remotely,

11   pursuant to Executive Order Number 202.7

12   issued by Governor Cuomo on March 19,

13   2020.

14         The parties and their counsel

15   consent to this arrangement and waive any

16   objections to this manner of reporting.

17         Please indicate your agreement by

18   stating your name and your agreement on

19   the record.

20         MR. MIZRAHI:  Jason Mizrahi from the

21   law offices of Levin-Epstein &

22   Associates, P.C., attorney for the

23   Defendant, Manojkumar Patel.  We consent.

24         MR. LEON:  Louis Leon, Plaintiff's

25   counsel, consent to that as well.
```

```
 1   S H I R L E Y   S A N C H E Z ,

 2        Spanish Language Interpreter, was

 3        thereupon duly sworn on oath to translate

 4        faithfully the questions asked and the

 5        answers given to the best of her ability.

 6   C A R L O S   C H I N C H A ,

 7        the witness herein, having been first duly

 8        sworn by a Notary Public, was examined and

 9        testified as follows:

10   EXAMINATION

11   BY MR. MIZRAHI:

12        Q.   Good morning, Mr. Chincha.

13        A.   Good morning.

14        Q.   My name is Jason, I represent the

15   Defendant in this action.

16             You're here this morning to sit for

17   a deposition, and before we begin I just wanted

18   to go over some ground rules, that way we can

19   make sure that we finish early without running

20   into any unnecessary issue.  Okay?

21        A.   Okay.

22        Q.   If at any point you don't understand

23   any of my questions, please let me know and

24   I'll be happy to rephrase them.

25        A.   Okay.
```

1      Q.   If you don't ask me to rephrase

2  them, I'm going to take that as you

3  understanding the question.

4      A.   Okay.

5      Q.   If at any point you'd like to take a

6  break, just let me know and I'd be happy to

7  take a break.  The only thing I'd ask is that,

8  if there's a question that is directed to you,

9  please answer the question before you ask to

10 take a break.

11     A.   Okay.

12     Q.   Most importantly, please make sure

13 you speak in a loud, clear voice and give

14 verbal responses to my questions.

15     A.   Okay.

16     Q.   What that means, Carlos, is, please

17 avoid from nodding your head up and down or

18 side to side.  All of your responses have to be

19 verbal.

20     A.   Okay.

21     Q.   One last thing.  I understand that

22 your daughter is in the room with you; is that

23 correct?

24     A.   Yes.

25          MR. LEON:  Jason, like I said

```
 1   previously, I wanted to make a quick

 2   statement about this as soon as we --

 3   Jason.  Jason.

 4        Okay.  Mr. Chincha, I'm directing

 5   you, for the time being --

 6        MR. MIZRAHI:  You're not allowed to

 7   make any --

 8        MR. LEON:  Jason, we're going to

 9   speak one at a time and I started.  You

10   have this nasty habit of speaking over

11   me.  Let me finish.

12        Madam Translator, please -- Jason.

13   Jason.  I'm directing my client to hold

14   off from answering questions until I've

15   put my statement on the record --

16        Jason.  Jason.  I told you before we

17   started that I wanted to put a statement

18   on the record and you are deliberately

19   trying to prevent me from doing that.

20   So, you can continue delaying this --

21        Jason.  Jason.  Jason.  You can

22   continue talking over me, but until this

23   is done, until I put my statement on the

24   record, you are not going to continue

25   getting answers from my client until I'm
```

```
 1    done making my quick statement.
 2         MR. MIZRAHI:  I will be calling the
 3    Court --
 4         MR. LEON:  I'm going to make my
 5    statement.
 6         Number one -- Jason.  Number one --
 7    Jason.  Jason.  Jason.  Jason.  I'm going
 8    to finish my statement for the record.
 9         Number one, this is to confirm that
10    this deposition is not being video
11    recorded in any shape or form.
12         When we were about to start this
13    deposition you attempted to start
14    recording this deposition without giving
15    us prior notice.
16         When we brought to your attention
17    that you had not served a depo notice
18    explaining that this deposition remotely
19    being taken would be recorded, you
20    decided to not continue with a video
21    recording.
22         So, to that extent, if anything's
23    being recorded, this will not be
24    admissible in any shape or form.
25         Lastly, I told you before we started
```

```
 1    the deposition, I told you I would

 2    properly put a statement on the record

 3    disclosing it to you -- because it's not

 4    a secret, I told you before we started --

 5    that my client's daughter's in the room.

 6    She will only be assisting for technical

 7    reasons related to Zoom, document

 8    sharing, zooming in, being able to access

 9    the Zoom application.

10        That is the role -- that is her

11    limited role in this deposition and it's

12    our position that she's going to need to

13    be there the entire deposition to make

14    sure that nothing gets dropped,

15    disconnected, X'd out, because my client

16    doesn't know how to do it.

17        So, I'm putting that on the record;

18    proceed to asking your questions, Jason.

19        MR. MIZRAHI:  Toni, are we on the

20    record?

21        THE REPORTER:  Yes, we are.

22        MR. MIZRAHI:  I'm going to be

23    placing a phone call to the chambers of

24    Magistrate Judge Steven L. Tiscione.

25    We'd like to have this phone call placed
```

```
 1   on the record.

 2        THE REPORTER:  Thank you.

 3        MR. LEON:  Madam Translator, could

 4   you just advise my client that a call

 5   will be made to chambers and that he is

 6   not being asked any questions and he is

 7   not, right now, to interact with anyone

 8   in this deposition while attorneys call

 9   the Judge.

10        THE INTERPRETER:  Okay.

11        MR. LEON:  I actually ask that you

12   turn off your video and your microphone

13   to allow counsel to comfortably make a

14   phone call to the Court's chambers.

15        (The following call to Magistrate

16   Judge Steven Tiscione's chambers took

17   place:)

18        UNIDENTIFIED SPEAKER:  Good morning,

19   Magistrate Judge Tiscione's chambers.

20        MR. MIZRAHI:  Good morning.  My name

21   is Jason Mizrahi.  I represent a

22   Defendant in a pending matter before

23   Magistrate Judge Tiscione.

24        I'm calling in regards to a

25   deposition that's currently proceeding.
```

```
 1    We've run into an issue with respect to

 2    attorney for Plaintiff coaching his

 3    client.  I'd like to just brief --

 4         UNIDENTIFIED SPEAKER:  Okay.  I'm

 5    going to need your --

 6         MR. MIZRAHI:  -- the

 7    issue --

 8         UNIDENTIFIED SPEAKER:  Okay.  Stop

 9    talking, stop talking.

10         I'm going to need your phone number

11    where you can be reached and I can have

12    the Judge get back to you.

13         MR. MIZRAHI:  Okay.  My phone number

14    is XXX-XXX-XXXX.

15         UNIDENTIFIED SPEAKER:  Do you have a

16    court reporter present?

17         MR. MIZRAHI:  Yes.

18         UNIDENTIFIED SPEAKER:  Is there

19    speakerphone capability?

20         MR. MIZRAHI:  Yes.

21         UNIDENTIFIED SPEAKER:  And what is

22    the docket number on the case?

23         MR. MIZRAHI:  The docket number is

24    17-cv-06127.

25         UNIDENTIFIED SPEAKER:  Okay.  I'll
```

```
 1        have the Judge get back to you shortly.

 2        Thank you.

 3             MR. MIZRAHI:  Thank you.

 4             (The call was concluded.)

 5             MR. LEON:  So we're going to wait or

 6        do you want to proceed?

 7             MR. MIZRAHI:  We'll proceed.

 8             MR. LEON:  Okay.  (Speaking

 9        Spanish.)  I'm asking him to put on the

10        video and the sound.

11   BY MR. LEON:

12        Q.   We want to make sure that the

13   deposition testimony that you're giving today

14   is accurate.

15        A.   Okay.

16        Q.   To make sure that it's accurate, we

17   need to make sure that all of your responses

18   are being given from you directly.  What that

19   means is, you're not allowed to be coached from

20   your attorney or from anybody else who's in the

21   room with you about what to say.

22             MR. LEON:  Objection to the form of

23        the question or to the statement.

24        Q.   Do you understand, Carlos?

25        A.   Yes.
```

Carlos Chincha
April 23, 2020                              14

```
 1            MR. LEON:  I would also ask, Madam

 2       Translator, can you also translate my

 3       objections for my client, as well, so he

 4       can hear them?

 5            THE INTERPRETER:  I'm going to beg

 6       you that, please, give me the instruction

 7       if he can answer or not, because --

 8            MR. LEON:  Definitely.

 9            THE INTERPRETER:  Absolutely.  No

10       problem.

11            MR. LEON:  Thank you.

12            MR. MIZRAHI:  He's going to answer

13       no matter what, just so you know.

14            MR. LEON:  Objection to that

15       willfully inaccurate statement.  My

16       client will respond subject to any

17       objections.

18            Thank you, Jason.  Proceed with your

19       deposition.

20       Q.   Carlos, is there anybody else in the

21  room with you right now?

22       A.   No.

23       Q.   Was there anyone in the room with

24  you a moment ago?

25            MR. LEON:  Objection.  Just -- the
```

```
 1        translation --
 2              THE INTERPRETER:  I'm sorry.  Could
 3        you repeat that, Mr. Jason?  And can you
 4        focus your camera?  I can see only your
 5        chest.
 6        Q.   Carlos, is there anybody else in the
 7   room with you right now?
 8              MR. LEON:  Objection, asked and
 9        answered.  You may respond.
10              I'm sorry.  Can you please translate
11        all of my objection, not just the last
12        part?
13              MR. MIZRAHI:  You don't have to
14        translate his objections, Christina.
15              MR. LEON:  Well -- I'm sorry.  I'm
16        sorry.  Okay.  So, now you're creating
17        problems.
18              Yes, if I make the request she will
19        have to do that, respectfully to her,
20        because my client has an interpreter
21        here.  It's not fair that he doesn't get
22        to hear my objection if I direct him not
23        to answer.
24              MR. MIZRAHI:  But, all of your
25        objections should be directed to the
```

```
 1   court reporter.  None of your objections

 2   should be directed to your client.  Your

 3   client should have no need --

 4       MR. LEON:  Jason, if I want to

 5   direct my client not to respond to a

 6   question, I have that right, just like

 7   you did during your client's deposition.

 8       So, I'm absolutely asking the

 9   translator to translate my objections.

10   If you want to continue wasting time,

11   this is on you.

12       MR. MIZRAHI:  (Inaudible) not to

13   respond.  It's past that.  You're not

14   allowed to coach your client.

15       MR. LEON:  Okay.  Madam Translator,

16   I'm going to respectfully ask -- and

17   you've done this before.  I'm sure you

18   know what the answer is.

19       I'm respectfully asking that you

20   translate my objection and, you know,

21   what I say with that objection, which is

22   short and simple.  It's "Objection,"

23   this, "You may respond."  That's it.  Or

24   "You can't respond."  Simple as that.

25       I'm not asking you to translate
```

```
 1        every last word I'm saying right now to

 2        Mr. Mizrahi, because Mr. Mizrahi causes

 3        me to say so many things to him because

 4        he's frequently wrong, so I want to make

 5        sure that my client understands the

 6        objection.

 7             Jason, proceed with your deposition,

 8        because you're delaying it.

 9        Q.   Carlos, is your daughter in the room

10   with you right now?

11             MR. LEON:  Objection, asked and

12        answered.  You may answer again,

13        Mr. Chincha.

14             THE WITNESS:  No.

15        Q.   Is there anybody else in the room

16   with you right now?

17             MR. LEON:  Objection, asked and

18        answered.  You may respond again.

19        Q.   Carlos, a moment ago your

20   attorney --

21             MR. LEON:  Are you withdrawing the

22        question, Jason?

23        Q.   Carlos, a moment ago your --

24             MR. LEON:  Jason.  Jason.  Are you

25        withdrawing the question?
```

1          Q.   Carlos, a moment ago your attorney

2     stated that your daughter would be available to

3     help with technology.  Is that the case?

4               MR. LEON:  Objection, compound

5          question.  You may respond.

6               THE WITNESS:  She's near.

7          Q.   Can you please bring her in, please?

8               MR. LEON:  Objection.  Objection.

9          No.  You're not -- your deposition

10         doesn't allow you to bring someone in or

11         have him do stuff.  Ask him a question

12         and he'll answer your question.

13         Q.   Is your daughter there, Mr. Chincha?

14              MR. LEON:  Okay.  Objection, asked

15         and answered.  This is the last time I'm

16         having my client answer this question.

17              Please translate the question, Madam

18         Translator.

19              THE WITNESS:  No.

20         Q.   Is she in the other room?

21         A.   Yes.

22         Q.   Can you please ask her to come in?

23              MR. LEON:  Objection.  Objection.

24         You can ask him questions, but you're not

25         going to ask him to go do physical feats

```
 1   like going to bring someone in.  You're
 2   going to ask him questions --
 3        This can be cleared up on the record
 4   between counsel if you need it.  This is
 5   not an appropriate way to proceed here,
 6   Jason.
 7        So, no.  He's not going to go get
 8   her, you have to ask him questions and
 9   he'll answer truthfully, to the best of
10   his ability, subject to any objections.
11        MR. MIZRAHI:  Toni, Madam Court
12   Reporter, could you please star Plaintiff
13   counsel's response to my last question?
14        MR. LEON:  And you can star it and I
15   can supplement it by simply saying, my
16   position is, Jason, you can ask him
17   questions -- no, Jason.  You can put your
18   hand up all you want; I'm going to
19   finish.
20        You can ask him the questions that
21   you want to ask him, but you're not going
22   to be ordering him to go do the duties
23   that you want him to do, go bring someone
24   from the other room, bring them out.
25        If you want to clarify the
```

```
 1          daughter's role, I've already done that.

 2          You're wasting time asking questions

 3          about that.  Make your statement on the

 4          record if you need to make it and ask him

 5          questions.

 6              MR. LEON:  Madam Court Reporter, can

 7          you please confirm that the response has

 8          been starred?

 9              THE REPORTER:  Yes.  I marked it.

10          Yes.

11          Q.   Carlos, can you please ask your

12    daughter to come into the room?

13              MR. LEON:  Okay.  Objection.  Jason,

14          you literally just heard what I said.

15              If there's something that you want,

16          ask me and I can have it done.  Don't ask

17          him to go bring someone from a different

18          room.  He's not here to obey orders to go

19          do something in a different room.

20              If you want me to have his daughter

21          come in, I can try and contact her, have

22          her come in, but she's not answering

23          questions under oath; she's not under

24          oath, she's simply --

25              You said you didn't want her in the
```

```
 1          room, my client's answered that she's not

 2          in the room.  What more do you want?

 3              Put your statement on the record and

 4          I can ensure that it will be followed to

 5          the extent that it's a reasonable

 6          request.

 7          Q.   Carlos, if I ask you a question,

 8      please answer the question.

 9              MR. LEON:  Wait for a question,

10          Carlos.  Wait for a question.

11          Q.   Carlos, can you please ask your

12      daughter to come into this room?

13              MR. LEON:  Objection.  I am

14          directing you -- you can respond to his

15          question, but you do not need to go do

16          anything.

17              Let the record reflect that there's

18          some sounds being made where it sounds

19          like someone is entering the room.

20              MS. SANCHEZ:  What do you need?

21              MR. MIZRAHI:  Hello?

22              MS. SANCHEZ:  Yes?

23              MR. MIZRAHI:  Hi.  My name is Jason.

24              MR. LEON:  I'm sorry.  I'm going to

25          object to this.  She's not under oath.
```

```
 1      So, make your statement for the record,
 2   Jason, and we will comply to the best of
 3   our ability.
 4        She's not under oath here, she's not
 5   being questioned here, she's free to walk
 6   up and leave if she wants to.
 7        So, I'm asking you, if you want to
 8   make a statement like you don't want her
 9   to coach him, which she's never going to,
10   make your statement on the record.  I
11   believe you already have.  That's it.
12   Please, let's stop wasting time asking
13   questions --
14        MR. MIZRAHI:  I'm going to ask you
15   to please stop speaking out of line.
16   You're only limited to giving objections
17   as to form and privilege.  I'm going to
18   ask you again to stop coaching your
19   client and whoever --
20        MR. LEON:  I'm sorry, I'm sorry.
21   Are you saying that his daughter's my
22   client?  Is that what you're saying?
23        MR. MIZRAHI:  No.  That's not what
24   I'm saying.
25        MR. LEON:  I'm confused by your
```

```
 1   argument and its legal basis.  Please

 2   explain it to me so I --

 3       MR. MIZRAHI:  I understand that

 4   you're available today to assist with

 5   some technology; is that correct?

 6       MS. SANCHEZ:  Yes.

 7       MR. MIZRAHI:  Okay.  So, I'd like

 8   your assistance to pull up some exhibits

 9   that we will be introducing into

10   evidence.

11       MS. SANCHEZ:  Okay.

12       MR. MIZRAHI:  I'm sharing these

13   exhibits through the Zoom chat.  I'm

14   sharing them right now, so if you could

15   just please confirm that you have them

16   pulled up, that would be helpful.

17       MR. LEON:  As you do that, Shirley,

18   I just want to say, in the future, Jason,

19   you could have just said that you needed

20   her for an exhibit and that would have

21   been all that we needed to do.

22       So, please, in the future just ask

23   and it will be --

24       MR. MIZRAHI:  This is the last time

25   I'm going to tell you --
```

 1        MR. LEON:  Jason, you can threaten

 2   all you want.  I'm simply saying, in the

 3   future please just ask me to bring her in

 4   so that she can take care of the

 5   exhibits.  That's all you had to say.

 6        Now proceed with your questions.

 7        MR. MIZRAHI:  Can you please confirm

 8   the documents that I have sent you, if

 9   you can just confirm exactly what you

10   have in front of you.

11        MS. SANCHEZ:  Okay.  It says

12   Exhibit A, Exhibit B and Exhibit C and D.

13        MR. MIZRAHI:  Can you please pull

14   each of those documents up individually

15   so you can see them?

16        MS. SANCHEZ:  Okay.

17        MR. LEON:  Shirley, as you're doing

18   that, I'd just like to object that, just

19   because those documents are opened up

20   does not necessarily mean that she will

21   not be needed throughout the deposition.

22   I'd like to note that for the record that

23   we may still need her.

24        Proceed with your questions or

25   statements, I guess.

```
 1        MS. SANCHEZ:  Yeah.  They're open.

 2        MR. MIZRAHI:  Your client didn't

 3   make one single indication that he would

 4   have any issues pulling any documents up.

 5   You're improperly coaching your client.

 6        MR. LEON:  And that's why I made the

 7   statement at the beginning of this

 8   deposition, Jason.  That's why he didn't

 9   need to do it, because you didn't ask him

10   the questions, and I made the statement

11   on the record before you asked him the

12   questions.

13        Please, Shirley, if you could please

14   open up those documents, as Counsel's

15   requested.

16        MS. SANCHEZ:  Yeah.  I pulled them

17   up already.

18        MR. MIZRAHI:  Louis, I'm going to

19   ask you again, stop directing your client

20   and stop directing whoever else is in the

21   room.  You're --

22        MR. LEON:  Wait, Jason.  Wait,

23   Jason.  I'm not talking to the Witness,

24   Jason.  I'm talking to the same person

25   you're talking to about exhibits.
```

```
 1              MR. MIZRAHI:  -- stop coaching -

 2              MR. LEON:  Jason, I'm not talking to

 3         my witness.  Jason, I'm not coaching my

 4         witness, I'm talking to the person who's

 5         opening up the exhibits, the same person

 6         you're taking to.

 7              Shirley, please make sure those

 8         documents are opened up, as Defense

 9         counsel has requested.

10              MS. SANCHEZ:  They are open.

11              MS. MIZRAHI:  Shirley, while you're

12         here, I'd just like to let you know that

13         your presence here is only going to be

14         limited to assisting with technology on

15         an as-needed basis.

16              MS. SANCHEZ:  Yes.  I understand

17         that.

18              MR. MIZRAHI:  You're prohibited from

19         being present at the deposition for any

20         other purpose, especially to guide your

21         father in answering questions.

22              MS. SANCHEZ:  I understand that.

23         Q.   Carlos, are you currently taking any

24    prescription medications?

25         A.   Yes.
```

Carlos Chincha
April 23, 2020                                            27

```
 1          Q.   What medications are you currently
 2     taking?
 3          A.   For diabetes, for blood pressure and
 4     cholesterol.
 5          Q.   Will any of these medications affect
 6     your ability to testify truthfully today?
 7          A.   No.
 8          Q.   Is there any reason why you wouldn't
 9     be able to testify truthfully here today?
10          A.   No.
11          Q.   Mr. Chincha, how did you prepare for
12     this deposition?
13          A.   I prepared with my attorney for
14     45 minutes.
15          Q.   Did you and your attorney review any
16     paperwork?
17               MR. LEON:  Objection to the form.
18          You may respond to that question.
19               THE WITNESS:  Yes, with my
20          attorneys.
21          Q.   Carlos, did you and your attorney
22     review any paperwork to prepare for the
23     deposition?
24               MR. LEON:  Objection, asked and
25          answered.  You may respond.
```

```
 1              THE WITNESS:  Yes.

 2         Q.   What paperwork did you and your

 3    attorney review?

 4         A.   Exhibit A, B, C, D.

 5              MR. LEON:  I'm just instructing

 6         Mr. Chincha to respond in Spanish so that

 7         the translator can translate correctly.

 8              MR. MIZRAHI:  Don't direct your

 9         client --

10              MR. LEON:  Jason.  Jason.  Right now

11         I'm indifferent to what your position is

12         on this.

13              Please, Madam Translator, can you

14         tell my client to respond in Spanish so

15         that you, the translator, have an easier

16         time explaining the testimony.

17              THE INTERPRETER:  (Complies.)

18              THE WITNESS:  Okay.  The Complaint

19         and Exhibits A, B, C and D.

20         Q.   Carlos, besides the Complaint and

21    besides Exhibits A, B, C and D, which were

22    uploaded to you directly a moment ago, did you

23    review any other paperwork to prepare for this

24    deposition?

25              MR. LEON:  Objection to the form of
```

```
 1          the question.  You may respond.
 2              I'm sorry.  Madam Translator, can
 3          you please translate my objection and my
 4          instruction to my client.
 5              THE WITNESS:  No.
 6      Q.  Carlos, can you please spell your
 7   full name for the record?
 8      A.  Carlos Chincha.
 9              THE INTERPRETER:  Court reporter --
10          Toni, do you want the spelling or --
11              MR. LEON:  I -- I'm sorry.  I would
12          rather allow the attorney to ask that
13          question.
14              THE INTERPRETER:  Okay.
15      Q.  Carlos, can you please spell your
16   full name?
17      A.  C-A-R-L-O-S, Carlos; C-H-I-N-C-H-A,
18   Chincha.
19      Q.  Carlos, when is your birthday?
20      A.  June 20, 1953.
21      Q.  Carlos, where were you born?
22      A.  Peru.
23      Q.  Which city?
24      A.  Lima.
25      Q.  Carlos, what is your current
```

```
 1    address?

 2              MR. LEON:  Objection.  Do not

 3         respond to that, but please translate the

 4         question.  If you want the reason, I'll

 5         give it to; if not, please proceed with

 6         your question.

 7              MR. MIZRAHI:  What's the basis for

 8         your instructing your client not to

 9         respond to that question?

10              MR. LEON:  Now that you ask, I'll

11         gladly explain.  It's irrelevant, it's

12         meant to harass him and it's private,

13         confidential information that has no

14         bearing in this case.

15              And we're concerned for reasons that

16         we would gladly bring up in a phone call

17         with Judge Tiscione about concerns

18         relating to immigration status and what

19         could happen to my client if he gives the

20         exact address of where he lives.

21              There's no relevance of where he

22         currently lives to this lawsuit.  That is

23         the basis, among other things, for

24         directing him not to respond to that

25         question.
```

```
 1              If you have something I should

 2        consider, I will gladly consider it and

 3        respond.

 4              MR. MIZRAHI:  We'll note your

 5        objection and we'll raise it on the phone

 6        call with Judge Tiscione.

 7              MR. LEON:  Sure.

 8        Q.   Carlos, how long have you lived at

 9   your current address?

10        A.   Around seven months.

11        Q.   Where were you living previously?

12              MR. LEON:  Objection.  You may

13        respond.

14              THE WITNESS:  In Queens.

15        Q.   What was the address of your last

16   residence?

17              MR. LEON:  Objection to the form of

18        the question.  You may respond.

19              THE WITNESS:  In Patel's building.

20        Q.   Mr. Chincha, when did you immigrate

21   to America?

22        A.   I don't remember, but I would say

23   about 27, 28 years ago.

24        Q.   Can you tell me about how you came

25   to America?
```

```
 1            MR. LEON:  Ooh.  Objection.  Do not

 2       respond.  You may translate the question.

 3            I'll gladly explain to you why.

 4       Immigration status, that's the concern.

 5       Q.   Carlos, how did you immigrate to

 6  America?

 7            MR. LEON:  Objection to form, but

 8       also directing the client not to respond

 9       to that question.  Same reason.

10            MR. MIZRAHI:  For the record, can

11       you please articulate your basis for

12       instructing your client not to respond to

13       that question?

14            MR. LEON:  So, in case you paused

15       sound a minute ago, I will say it again:

16            You're asking him how he immigrated

17       to the United States, which has several

18       implications of how immigrants get into

19       this country.  That has to do with

20       immigration status, which you, an

21       employment attorney, should know, is not

22       permissible in this circuit.

23            So, I'm directing my client not to

24       respond to that question, because it goes

25       to his immigration status.
```

 1          Q.   Carlos, how old were you when you

 2    immigrated to America?

 3          A.   Forty years old.

 4          Q.   Carlos, why did you immigrate to

 5    America?

 6          A.   Because I wanted to get better.

 7          Q.   What do you mean by that?

 8          A.   The conditions in Peru were very

 9    bad.

10          Q.   Carlos, when you immigrated here did

11    you come by yourself or with anybody else?

12               MR. LEON:  Objection.  Respond to

13          that question, but without giving any

14          details regarding immigration status --

15          about immigration status.

16               THE WITNESS:  Alone.

17          Q.   Mr. Chincha, have you ever been

18    married?

19          A.   Always.

20          Q.   How many times have you been

21    married?

22               MR. LEON:  Objection, relevance.

23          You may respond.

24               THE WITNESS:  Only once.

25          Q.   Do you recall, when did you get

```
 1    married?
 2             MR. LEON:  Objection, relevance.
 3        You can answer.  You may respond.
 4             THE WITNESS:  Honestly, I don't
 5        remember the date, but I would say
 6        around -- more than 40 years.
 7        Q.   Do you have any children?
 8             MR. LEON:  Objection.  You may
 9        respond.
10             THE WITNESS:  Yes.
11        Q.   How many children do you have?
12             MR. LEON:  Objection, relevance.
13             THE WITNESS:  I have five boys and
14        one daughter.
15             MR. LEON:  I'm not sure that's what
16        he said.  I'd like to object that that's
17        not what he said in Spanish.
18             THE INTERPRETER:  I'm sorry.
19        Interpreter was wrong and attorney was
20        right.  So, two boys and one girl.
21             MR. MIZRAHI:  I'm going to ask you
22        again to stop coaching your client.
23             MR. LEON:  Jason, I wasn't coaching,
24        I actually spoke to the translator.
25             Madam Translator, is that correct
```

```
 1   that I only spoke to you --
 2        THE INTERPRETER:  He was correcting
 3   me.
 4        MR. LEON:  Thank you.
 5        MR. MIZRAHI:  And I'm going to ask
 6   you again to stop speaking out of line.
 7        MR. LEON:  Jason, I don't know what
 8   "speaking out of line" means, because
 9   we're not, like -- I don't know what that
10   means.  We're not friends or anything, so
11   I don't know what "out of line" means.
12   But, just let's continue asking
13   questions, please.
14        MR. MIZRAHI:  Well, what that means,
15   Louis, is that any speaking objection
16   that you have is limited to objection as
17   to privilege and objection as to a form
18   of a question.
19        MR. LEON:  Where did you learn that?
20        MR. MIZRAHI:  You are not allowed to
21   articulate anything --
22        MR. LEON:  Did you learn that at the
23   last deposition, Jason?  Because, it
24   sounds like the Judge had to tell you
25   some of these things at the last
```

 1    deposition.

 2        And actually, the Judge said that we

 3    could object -- no, no, Jason.  You

 4    continue interrupting me, we're going to

 5    continue doing this.

 6        The Judge said that we can object,

 7    give our quick statement and then direct

 8    the client to respond or not respond and

 9    that's it.  And that's what I've been

10    doing.  I'm in compliance with the

11    Judge's rules.

12        But, I'm sorry.  As you know, I'll

13    say this for the record, I am a native

14    Spanish speaker, I'm a son of Hispanic

15    immigrants.

16        The translator, as anyone, human

17    error, got a part of the translation

18    wrong, she just confirmed that she got it

19    wrong, so I put it on the record.

20        You may proceed, Jason.

21        MR. MIZRAHI:  Louis, please be

22    quiet.

23        MR. LEON:  No.  Jason, please don't

24    tell me to please be quiet or shut me

25    down that way, just continue with your

```
 1              deposition.  We're equals, I'm not your
 2              subordinate.  Go on.  Shame on you.
 3              Q.   Carlos, have you ever gotten
 4      divorced?
 5                   MR. LEON:  Objection, relevance.
 6              And this is the last question on this
 7              sort of thing I'm going to allow you to
 8              be asking, because I don't see the
 9              relevance and it sounds like annoying and
10              harassing.  But, my client can respond to
11              that question.
12                   MR. MIZRAHI:  Christina?
13                   THE INTERPRETER:  Yes, sir.
14                   MR. MIZRAHI:  Please stop
15              translating his objections until we get
16              the Judge on the phone call --
17                   MR. LEON:  Jason, that's not how
18              this works.  You might be paying for the
19              transcript, you might be paying for the
20              translator, but you do not get to dictate
21              what they take down and what they don't
22              take down if I'm speaking and I'm
23              saying --
24                   MR. MIZRAHI:  (Unintelligible.)
25                   MR. LEON:  I absolutely have the
```

```
 1         right -- Jason.  No, no, no.  Jason.

 2         Jason.  Did you bring this up during the

 3         deposition of your client, who

 4         understands English very well, or kind

 5         of, was able to hear your objections and

 6         your directions to him.  My client has

 7         that same right.

 8              Don't instruct the translator to not

 9         do her function.  Shame on you.  Go on.

10         Q.   Carlos, have you ever gotten

11    divorced?

12              MR. LEON:  Same objection.

13         Irrelevant, harassing.  But, you may

14         respond.

15              THE WITNESS:  No.

16         Q.   Carlos, have you ever been arrested?

17              MR. LEON:  Objection as to

18         relevance.  I'm going to need a second to

19         ascertain whether there's a privilege

20         that needs to be interposed.  Give me a

21         second, Jason, while I think.

22         Q.   Carlos, the question is whether or

23    not --

24              MR. LEON:  No, no, no.  Jason.

25         Jason.  No.  No.  No.  I'm considering
```

```
 1          right now if there's a privilege I should

 2          be making.  Give me -- it's literally

 3          been three seconds.  Hold on.  Stop

 4          proceeding forward with the questions.

 5               I'm going to let you ask this one

 6          question about potential criminal

 7          history, but it's irrelevant and, in

 8          conjunction with all your other

 9          questions, it's harassing.

10               So, I'm going to direct my client to

11          respond to your question, but that's...

12               THE WITNESS:  No.

13          Q.   Have you ever been convicted of a

14   crime?

15               MR. LEON:  Okay.  This is, in fact,

16          the last question I will let you ask him

17          about his criminal history.  I gave you

18          some leeway, he can respond to this, but,

19          after that, no more questions about

20          criminal history, because it's not

21          relevant and it's harassing.

22               THE WITNESS:  No.

23          Q.   Carlos, besides this lawsuit have

24   you ever been involved in any other legal

25   claims or lawsuits?
```

1        MR. LEON:  Objection to the form of

2    the question --

3        MR. MIZRAHI:  I'm getting a phone

4    call from the Court, okay?

5        MR. LEON:  Okay.  Great.

6        Can you please ask your daughter to

7    turn off the video and the mic, please?

8        (The following call with Magistrate

9    Judge Steven Tiscione took place:)

10        MR. MIZRAHI:  Your Honor, you're

11    currently in the deposition with the

12    court reporter.  Is that okay?

13        THE COURT:  That's fine.

14        MR. MIZRAHI:  You're on speakerphone

15    right now and you're joined by opposing

16    counsel as well as the court reporter.

17        We're calling you this morning,

18    Your Honor, in connection with the

19    deposition in the matter of Chincha v.

20    Patel.

21        We're currently taking Plaintiff's

22    deposition and we're running into two

23    issues with respect to Plaintiff's

24    counsel.

25        The first issue is, Plaintiff's

 1    counsel is impermissibly coaching his

 2    client on what to say.

 3        Multiple times during the deposition

 4    he has directed his client to testify in

 5    a specific language before the client has

 6    had an opportunity to respond.

 7        He has directed his client not to

 8    answer questions related to basic

 9    biographical information on the basis of

10    relevance.

11        He has impermissibly spoken and

12    coached his client related to answers to

13    questions before his client has had an

14    opportunity to respond.

15        And secondly, he has directed his

16    client's daughter to be present in the

17    room and is directing his client's

18    daughter to participate in the

19    deposition.

20        I'd like to make it clear that any

21    basis for her being in the room hasn't

22    been established.  His client had not

23    requested any assistance from his

24    daughter, his client didn't request any

25    assistance from somebody to be present.

1         So, we simply request that,

2    Your Honor, number one, direct

3    Plaintiff's counsel to refrain from

4    improper speaking objections.  Any

5    speaking objections that he has must be

6    limited to privilege or to form.

7         We'd respectfully ask Your Honor to

8    direct Plaintiff's counsel to refrain

9    from coaching his client and we would

10   respectfully ask Your Honor to refrain

11   from directing client's daughter to

12   participate in this deposition.

13        MR. LEON:  Your Honor, can I quickly

14   respond?

15        THE COURT:  Yes.

16        MR. LEON:  I apologize to Your Honor

17   that we're yet again in another phone

18   call with Your Honor regarding what

19   should otherwise be a simple deposition.

20        Let me start with the simplest

21   thing.  The daughter's role, contrary to

22   what Defense counsel said, I'm not

23   instructing her to participate in the

24   lawsuit in any way that would be

25   improper.

```
 1        I stated during our last conference,

 2   Your Honor, that my client is not

 3   technologically savvy.  His answer to the

 4   question, "Do you have an Apple product,"

 5   is, "Is that a type of fruit?"  He

 6   doesn't know how to handle this.

 7        And so, I told Mr. Mizrahi before we

 8   went on the record, at length, that his

 9   daughter would be readily available

10   there, would be in the room to the extent

11   that an exhibit needed to be opened or

12   there was some issue, because

13   Mr. Mizrahi's uploading exhibits onto the

14   Zoom function.  If my client accidentally

15   X's out, then those documents are not

16   available to him.

17        And there's many glitches that I,

18   someone who knows how to use technology,

19   have experienced and messed up and have

20   had hours' worth of delays in mediations

21   and depositions.

22        I'm simply trying to ensure that

23   this individual, his daughter, who, for

24   the record, is no longer in the room, has

25   since then been instructed to go into a
```

```
 1    different room, has remained in a

 2    different room and only came back when

 3    Mr. Mizrahi ordered her to come back, as

 4    if she were a witness in this case.

 5         So, we're not using her improperly.

 6    I've stated on the record that his

 7    daughter is not participating, is not

 8    coaching.  She has acknowledged that,

 9    she's helped out already with exhibits.

10         My client, simply put, needs this.

11    This is not a luxury, this is a real

12    need.  And she knows and she's

13    acknowledged that she's not

14    participating.  She's not coaching him in

15    any shape or form.

16         So, as to that, I told Defense

17    counsel and he tried to not let me put

18    those statement on the record.  And when

19    I put it on the record he said that I'm

20    making impermissible statements.

21         The other thing, the other part of

22    what Defense counsel lumped together with

23    no examples at all is that I'm somehow

24    making speaking objections and speaking

25    free for all.
```

```
 1        I should just give Your Honor

 2   context that Defense counsel noticed the

 3   deposition for a remote deposition, no

 4   recording whatsoever.

 5        At the start of this deposition, in

 6   bad faith, without giving me notice,

 7   without telling me he was going to do it,

 8   he began recording the deposition.

 9        When I pointed out to Mr. Mizrahi

10   that his last deposition notice did not

11   show a video recording, that I had not

12   been able to properly prepare my client

13   for such a deposition or object to one,

14   he soon thereafter decided to not do

15   video recording.  It's ever since been

16   X'd out.

17        So, at the beginning of the

18   deposition I said I'd like to put this on

19   the record, I'd like to make sure that

20   we're on the same page, that nothing's

21   being recorded and that, to the extent

22   that anything gets inadvertently

23   recorded, you're not going to use that or

24   rely upon it in any shape or form for

25   trial.
```

1          Mr. Mizrahi was unhappy that I would

2     make any of those statements.  He did not

3     want me to able to do that.

4          As to specific questions,

5     Mr. Mizrahi has gone so far to tell the

6     translator -- my client's a Spanish

7     speaker who is using a translator.  I

8     speak Spanish as well, but I am not

9     engaging in speaking with my client in

10    Spanish, I'm doing it through the

11    translator.

12         Mr. Mizrahi has unilaterally told

13    the translator wrongfully that she is not

14    to translate my objections or directions

15    for him to not answer.

16         Mr. Mizrahi seemingly wants my

17    client to be ambushed.  And if I'm

18    telling him not to answer a question, he

19    should be able to understand my

20    instruction and should not answer.

21         Mr. Mizrahi has done that, even

22    though his client, who understands

23    English quite well, reads and writes it,

24    at least on an average level, had the

25    privilege of having his counsel defend

```
 1   him and he could hear his objections.

 2   But, he wants to keep that from my

 3   client.

 4        And as to the specific points of

 5   questions I directed my client not to

 6   answer, they've only been on questions

 7   that there -- it is harassing, it is

 8   annoying, there's no possible relevance

 9   and there are some serious concerns.

10        For example, Your Honor is familiar

11   with the fact that in the Second Circuit

12   it is outright improper to ask a client

13   about his immigration status, how he got

14   into the country, and Mr. Mizrahi has

15   gone so far to ask him, at least two or

16   three time repeatedly, after I told him,

17   "Don't answer that question" to my

18   client, "How did you arrive at this

19   country?"

20        "How did you get in" was pretty much

21   the question or the implication of it,

22   and I've advised him that I'm directing

23   my client not to respond to that question

24   because it relates to his immigration

25   status.
```

 1        And there's so many related

 2    questions like that.  Mr. Mizrahi has

 3    been unable to cite a single example in

 4    which I supposedly have been making

 5    speaking objections.

 6        I took what Your Honor told us

 7    during the last phone call to heart at

 8    the last deposition.  I object, I state

 9    the basis of the objection quickly in a

10    couple of words and then I tell my client

11    "Respond to the question" so there's no

12    confusion or I say "Don't respond to the

13    question" and I provide the basis to

14    Counsel.

15        There's nothing improper about what

16    we're doing, there's no evidence that

17    we're doing anything improper and I'm

18    simply trying to leave a clear record for

19    this deposition.  That's it, Your Honor.

20        MR. MIZRAHI:  Your Honor, if I may

21    quickly respond, I promise my response

22    will be quick.

23        THE COURT:  Go ahead.

24        MR. MIZRAHI:  I'd just like to point

25    out that Mr. Leon is making improper

```
 1   objections on relevance and then he's

 2   proceeding to --

 3        THE COURT:  That's not a relevance

 4   objection.  If you're asking questions on

 5   his immigration status, that's

 6   prohibited.

 7        MR. MIZRAHI:  I'm not asking him

 8   questions about his immigration status,

 9   Your Honor.

10        THE COURT:  Asking him how he got

11   into the country is an improper question.

12   You know that.  He shouldn't be answering

13   it.

14        MR. MIZRAHI:  Your Honor, I asked

15   him what his current address was and I

16   asked him how he immigrated to America.

17        And the purpose of the question is

18   directly relevant as to the manner in

19   which that this employee had voluntarily

20   wished to have gotten paid.  It directly

21   bears on the manner in which he got paid

22   during the course of his employment.

23        We're not using this testimony for

24   any improper purpose.  We're not using

25   this testimony with regards to his
```

1    immigration status.  We're simply using

2    it because it's directly relevant to the

3    crucial issue here of how he got paid and

4    the manner in which he voluntarily wished

5    to have gotten paid.

6        MR. LEON:  Your Honor, I'm sorry to

7    just reply, but, respectfully, that

8    doesn't really doesn't make sense.  I'm

9    now sure how he got into the country --

10       THE COURT:  I don't understand.  Is

11   he claiming he wanted to get paid in a

12   different way?

13       MR. LEON:  No.  Your Honor, there's

14   no dispute in this case about what my

15   client was paid or how he was paid.  I

16   questioned Defendant for seven hours a

17   week or a week and a half ago and we seem

18   to all be on the same page, at least

19   about how he was being paid and how much

20   he was being paid.

21       So, to act now like that has any

22   relevance on this, it's completely wrong

23   and deliberately misleading.  There's no

24   reason to know this other than to

25   ascertain his immigration status.

```
 1        And if I could add where this
 2   concern comes from, also, reading
 3   Mr. Patel, the Defendant's, deposition,
 4   he stated that the reason why --
 5        I mean, among other things, like
 6   admitting to defrauding the government
 7   and other admissions he made under oath,
 8   he stated that my client did not give him
 9   a Social Security number because, quote,
10   unquote, he doesn't have one, and
11   implying that he's illegally here.
12        So, clearly there's a belief that
13   he's illegal, which we're not going to
14   affirm or deny, because it's prejudicial
15   to our client, but clearly that's where
16   these questions were coming from.
17        "Why did you come to the United
18   States?"  "How did you come to the United
19   States?"  "Where do you currently live?"
20   Even though my client just told him that
21   he has not -- he's never lived in the
22   location where he currently lives at any
23   point in time while he worked for
24   Defendant and there's no dispute that my
25   client lived at the building the entire
```

```
 1   time that he worked there.

 2        So, there's no reason to ascertain

 3   these things other than -- and if I'm

 4   being honest, my concern is that this

 5   information is going to be used for some

 6   improper purpose -- I'm not saying by

 7   Counsel.

 8        But, Defendant made more than clear

 9   his hostility towards my client and

10   implying that he's illegal, then his

11   counsel asking him questions that have to

12   do only about his immigration status.

13   That's just improper.

14        And so, we're directing the client

15   not to respond to those questions.

16        THE COURT:  All right.  Look.  As to

17   the initial matter, his daughter can

18   provide technical assistance as long as

19   she's not participating in the actual

20   deposition itself.

21        So, if he needs her in the room to

22   help with the technology, I mean, that's

23   perfectly fine.

24        MR. MIZRAHI:  You Honor, we'd ask

25   that she be in front of the camera so we
```

```
 1   can see any facial expressions or
 2   manners that she's going --
 3        MR. LEON:  Your Honor, this is --
 4        MR. MIZRAHI:  We'd like to make sure
 5   she's not coaching her father in any way,
 6   shape or form.
 7        MR. LEON:  Your Honor, this is
 8   completely unnecessary.  Mr. Mizrahi's
 9   not mentioned a single instance in which
10   the daughter has even remotely tried to
11   coach the client.
12        And I made that clear on the record.
13   She acknowledged, "I'm not coaching him,
14   I'm not doing this."  And now that they
15   have to both share the spotlight and bump
16   into each other, then he's going to say,
17   "Oh, she touched him and that's why he
18   answered the way he answered" --
19        MR. MIZRAHI:  (Unintelligible.)
20        THE COURT:  I can't hear when
21   everybody's talking at once.
22        You know, this is your deposition.
23   If you want to proceed with somebody who
24   doesn't know what he's doing and can't
25   actually open up documents and, you know,
```

```
 1    respond to your questions, you're more

 2    than welcome to do that, but don't be

 3    surprised if you have a (unintelligible)

 4    deposition.

 5         She's not a party.  I'm not ordering

 6    her to do anything.  If she wants to

 7    provide technical assistance to help you

 8    out, that's fine.  But I'm not ordering

 9    her to appear on camera.

10         If you don't want to use her

11    assistance, then don't use her

12    assistance.  And you'll end up with a

13    useless deposition.

14         MR. MIZRAHI:  We would just ask

15    Your Honor to respectfully direct

16    opposing counsel to refrain from coaching

17    his client any further.

18         MR. LEON:  We're not coaching,

19    Your Honor.  There's no proof that

20    there's been coaching.

21         THE COURT:  Nothing I've heard to

22    this point suggests to me that he's

23    coaching his client.  He is telling his

24    client not to respond to improper

25    questions.  So, it's not coaching.
```

```
 1    That's called being a lawyer.
 2         MR. MIZRAHI:  Number one, he's
 3    directing his objections to his client,
 4    not to the court reporter.  If there are
 5    any objections that need to be spoken
 6    into the record, they should be spoken
 7    for the court reporter, not for purposes
 8    of coaching his client.
 9         He's directing his client to testify
10    in Spanish.  If his client understands my
11    questions and if he chooses to answer
12    voluntary in English --
13         THE COURT:  No.  No.  That's not
14    happening.  He either does it in Spanish
15    or he does it in English.  We're not
16    doing something where it's half in
17    English and half in Spanish.  Those come
18    out horrible.
19         You pick a language and you stick
20    with it.  You either use the interpreter
21    or you don't.  You don't do half and
22    half.
23         MR. LEON:  Your Honor, could I just
24    add just one thing about the objections.
25         All I've asked is that the
```

```
 1   translator translate my objections and my

 2   direction to my client to either respond

 3   or not respond.  Because, he might not

 4   understand a single thing I'm saying

 5   about the question that he needs to hear:

 6   "Objection, don't respond" or "Respond."

 7        THE COURT:  The translator should be

 8   interpreting everything.  There's no

 9   reason why the translator shouldn't be

10   interpreting everything.

11        If there's something you need to say

12   outside the presence of the witness, you

13   ask them to leave the room.  You don't

14   tell the interpreter not to interpret.

15        MR. MIZRAHI:  Thank you for your

16   assistance, Your Honor.  We're ready to

17   move forward.

18        THE COURT:  All right.  Good luck.

19        (The call was concluded.)

20        MR. MIZRAHI:  Just for the record,

21   it's 12:04.  I'm going to take a quick

22   bathroom break.

23        MR. LEON:  Sure.

24        (Recess taken.)

25        (Off-the-record discussion held.)
```

```
 1              MR. LEON:  Just for the record,
 2         we'll take a break at 1:15.  That's it.
 3    BY MR. MIZRAHI:
 4         Q.  Carlos, besides this case have you
 5    ever been involved in any other lawsuits?
 6              MR. LEON:  Objection to the form of
 7         the question.  You may respond.
 8              THE WITNESS:  No.
 9         Q.  Carlos, do you have any documents
10    related to your employment with Mr. Patel?
11              MR. LEON:  Objection to the form of
12         the question.  You may respond.
13              THE WITNESS:  No.
14         Q.  Carlos, before filing this lawsuit
15    did you give your attorney any documents?
16              THE INTERPRETER:  I'm sorry.  I
17         didn't hear that very well.
18         Q.  Did you give your attorney any
19    documents in connection with filing this
20    lawsuit?
21              MR. LEON:  Objection to the form of
22         the question.  You may respond without
23         revealing any privileged communications
24         between counsel and client.
25              THE WITNESS:  No.
```

```
 1         Q.   Carlos, did you ever search for any

 2    documents pertaining to your relationship with

 3    Mr. Patel?

 4              MR. LEON:  Objection to the form of

 5         the question.  You may respond.

 6              THE WITNESS:  No.

 7         Q.   Carlos, did anybody ever ask you to

 8    look for any documents pertaining to your

 9    relationship with Mr. Patel?

10              MR. LEON:  Objection.  Objection.

11         My client can answer, but without

12         breaking attorney-client privilege.

13              THE WITNESS:  No.

14         Q.   Carlos, do you maintain any records

15    concerning your relationship with Mr. Patel?

16              MR. LEON:  Objection to the form of

17         the question.  You may respond to that

18         question, Mr. Chincha.

19              THE WITNESS:  No.

20         Q.   Carlos, did you keep a log of the

21    hours that you worked at the building?

22              MR. LEON:  Objection to the form of

23         the question.  You may respond to that

24         question.

25              THE WITNESS:  No.
```

1       Q.   Carlos, do you have any utility

2    receipts from when you lived at the building?

3            MR. LEON:  Objection to the form of

4        the question.  You may respond.

5            THE WITNESS:  No.

6       Q.   How about any electrical receipts?

7            MR. LEON:  Objection -- no.  I'm

8        sorry, I'm sorry.  That's not what he

9        asked.  Counsel just asked about

10       electronic receipts, is the question he

11       asked.

12           Could the court reporter just read

13       back the question?

14           (Record read.)

15           MR. LEON:  Electrical, not

16       electronic?  Okay.  I take that back.  I

17       misheard.

18           Objection to the form of the

19       question.  You may respond.

20           THE WITNESS:  No.

21      Q.   Did you ever receive any invoices

22    from Mr. Patel?

23           MR. LEON:  Objection to the form of

24       the question.  You may respond.

25           THE WITNESS:  No.

Carlos Chincha
April 23, 2020                                    60

1        Q.   Carlos, how did you find your

2   attorney?

3             MR. LEON:  Objection to the form of

4        that question.  You may respond to that

5        question, Mr. Chincha.

6             THE WITNESS:  I found it in the

7        local newspaper.

8        Q.   What local newspaper?

9        A.   Like ads.

10       Q.   Do you recall the name of the

11  newspaper?

12       A.   No.

13       Q.   Was the advertisement in English or

14  in Spanish?

15            MR. LEON:  Objection to the form of

16       the question.  You may respond.

17            THE WITNESS:  Spanish.

18       Q.   What did the advertisement say?

19            MR. LEON:  Objection to the form of

20       the question.  You may respond.

21            THE WITNESS:  Repeat the question,

22       please.

23       Q.   What did the advertisement say?

24            MR. LEON:  Objection to the form of

25       the question.  You may respond.

```
 1              THE WITNESS:  Attorneys

 2         (unintelligible).

 3         Q.   Carlos, what is your attorney's

 4    name?

 5              MR. LEON:  Objection to the form of

 6         the question.  You may respond.

 7              THE WITNESS:  Louis Pena (phonetic).

 8         Q.   Carlos, how many times did you meet

 9    with your attorney before filing the lawsuit?

10              MR. LEON:  Objection.  Assumes

11         testimony in evidence, not on the record.

12         You may respond.

13              THE WITNESS:  Forty-five to fifty

14         minutes.

15         Q.   Forty-five to fifty minutes in one

16    session or more than one session?

17              MR. LEON:  Objection to the form of

18         the question.  You may respond to that

19         question.

20              THE WITNESS:  One session.

21         Q.   What made you decide to go with your

22    attorney?

23              MR. LEON:  Objection.  You may

24         respond to that question, but without

25         revealing any communications between my
```

1        office and you, Mr. Chincha.  Otherwise,

2        please respond to Mr. Mizrahi.

3             MR. MIZRAHI:  Louis, he didn't

4        reveal any information.

5             MR. LEON:  Yes, Jason.  Thank you

6        for stating the obvious.  That's why I'm

7        telling him not to.  But, thank you for

8        your contribution.

9             You may respond to the question,

10       Mr. Chincha.

11            THE WITNESS:  Because he was abusive

12       and arrogant.

13       Q.   Why did you hire your attorney?

14            MR. LEON:  Objection.  Asked and

15       answered.  Please respond without

16       revealing any communications between my

17       office and you, Mr. Chincha.  Otherwise,

18       please respond to Mr. Mizrahi's question.

19            THE WITNESS:  Because he was

20       arrogant and abusive.

21       Q.   Who did you first meet with when you

22  met with your attorneys?

23            MR. LEON:  Objection to the form of

24       that question.  You may respond.

25            THE WITNESS:  With my attorney,

```
 1          Louis Pena.

 2     Q.   Did you meet with anybody else?

 3          MR. LEON:  Objection to the form of

 4     the question.  You may respond.

 5          THE WITNESS:  No.

 6     Q.   How many times have you and Louis

 7 met?

 8          MR. LEON:  Objection to the form of

 9     the question.  You may respond to that

10     question.

11          THE WITNESS:  Two or three times.

12     Q.   Do you know when the Complaint in

13 this action was filed?

14          MR. LEON:  Objection to the form of

15     the question.  You may respond to that

16     question.

17          THE WITNESS:  The second time.

18     Q.   Carlos, I asked if you recall the

19 date when the Complaint in this action was

20 filed.

21          MR. LEON:  Objection.  Please wait

22     for Counsel to ask a question, then

23     answer.

24          Jason, I think he's waiting for you

25     to ask the question.
```

```
 1          Q.   Do you recall the date when this

 2     Complaint was filed?

 3               MR. LEON:  Objection to the form of

 4          the question.  You may respond.

 5               THE WITNESS:  October 2017.

 6          Q.   Mr. Chincha, are you currently

 7     employed?

 8               MR. LEON:  Objection, relevance.

 9          You may respond.

10               THE WITNESS:  No.

11          Q.   Carlos, were you employed in 2017?

12               MR. LEON:  Objection to the form of

13          the question.  You may respond.

14               THE WITNESS:  Until September of

15          that year I was with Patel.

16          Q.   What about afterwards?

17               MR. LEON:  Objection, relevance.

18          You may respond.

19               THE WITNESS:  No.

20          Q.   Were you employed in 2018?

21               MR. LEON:  Objection to the form of

22          that question.  You may respond to that

23          question.

24               THE WITNESS:  No.

25          Q.   What about in 2019?
```

```
 1              MR. LEON:  Objection to the form of

 2         that question.  You may respond to that

 3         question.

 4              THE WITNESS:  No.

 5         Q.   What about 2020?

 6              MR. LEON:  Objection to the form of

 7         the question.  You may respond to that

 8         question.

 9              THE WITNESS:  No.

10         Q.   Have you ever received any

11    government benefits?

12              MR. LEON:  Objection.  I'm directing

13         my client not to respond to that line of

14         questions.  If Mr. Mizrahi would like an

15         explanation, I'll gladly provide it.  Do

16         not respond.

17              MR. MIZRAHI:  Louis, please execute

18         your basis for refusing to allow your

19         client to respond.

20              MR. LEON:  The reason is that, in

21         the Circuit, requests for any government

22         benefits that a client may have received,

23         applied, tried to apply for is an

24         inappropriate line of questions, as a

25         general matter, as you hopefully know,
```

 1  but certainly I do, as someone who works

 2  in New York City, that most if not all

 3  government benefits are not possible to

 4  be given to people who have a certain

 5  documented or undocumented status.

 6      We believe it goes to immigration

 7  and we believe that it has absolutely

 8  nothing to do with this case and it is

 9  only being done to harass and annoy my

10  client in this action.

11      Furthermore, and I guess I'd say

12  finally, this is not a discrimination

13  case or disability case, this is a wage

14  and hour case, thus this is just

15  completely improper.  That's my basis.

16      MR. MIZRAHI:  Do you have a citation

17  for the Second Circuit authority that

18  you're referencing?

19      MR. LEON:  No, Jason, not right now

20  in front of me.  But, if we want to take

21  some time off and do some research, then

22  maybe you can provide me with your legal

23  basis for asking this question and we can

24  discuss it.  It will just eat away at

25  your seven hours, so you let me know what

```
1         you want to do.
2         Q.   Carlos, have you ever applied for
3    government benefits in 2017?
4              MR. LEON:  Objection.  Do not
5              respond.  I think I left my objection
6              superbly clear.  And especially if it's
7              concerning a time period during which my
8              client wasn't working for your client,
9              the point is further made.
10             Same objection as last time.
11             Continue, Counselor.
12        Q.   Mr. Chincha, have you ever filed
13   taxes in 2017?
14             MR. LEON:  Objection.  Do not
15             answer.  I'm going to make my objection.
16             Do not answer.
17             I will gladly further edify you
18             about why I'm directing my client not to
19             respond, but I presume you already know.
20             Would you like me to elaborate,
21             Counsel?  I'll make the decision for you.
22             The basis for that is, as you know
23             and Judge Tiscione just told you an hour,
24             hour and a half ago, that there are
25             certain questions you know are
```

```
 1          inappropriate; you're an employment
 2          litigator, you should know that you can't
 3          ask a plaintiff if he's filed taxes.
 4               And then, with follow-up questions
 5          that would be, well, "Did you have a
 6          Social Security?"  "Did you have a 1099?"
 7          "What's your legal status?"
 8          Inappropriate line of questions, all of
 9          those.
10               Directing my client not to respond.
11          And you already know you're not allowed
12          to ask that.  Please don't continue
13          engaging in questions that you know in
14          good faith you can't ask.  Don't answer.
15          Q.   Carlos, how have you received income
16     in 2017?
17               MR. LEON:  Objection to the form of
18          that question.  You may respond to that
19          question.
20               THE WITNESS:  I didn't receive
21          anything.
22          Q.   What about 2018?
23               MR. LEON:  Objection.  Objection.
24          I'm directing my client not to respond to
25          that.  What income he's made in 2018 has
```

 1   no relevance to this case and it's only

 2   meant to annoy and harass my client.

 3        Directing you not to respond,

 4   Mr. Chincha.

 5        MR. MIZRAHI:  For the record,

 6   opposing counsel has directed his client

 7   not to respond on the basis of relevance,

 8   which is a basis you've offered before,

 9   right?

10        MR. LEON:  Oh.  And -- no, no.  And

11   annoying and harassing, remember.  Don't

12   forget that.  I know you forget things

13   sometimes.  Don't forget.

14   Q.   What about in 2019?

15        MR. LEON:  Same objection.  Do not

16   respond.  Same objection and I'll gladly

17   continue explaining if you require

18   further explanation.  I want to work with

19   you in good faith.

20   Q.   Carlos, do you have any licenses?

21        MR. LEON:  Ooh.  Objection.  Unless

22   you clarify what you mean by that, I'm

23   not going to let my client respond.

24   Please clarify what you mean.

25        Because, there's a certain type of

1          license I'll let you ask him questions

2          about and there's a different type of

3          license I'm not going to let you ask him

4          questions about.

5               So, please clarify what you mean,

6          otherwise the direction to my client is

7          that he not respond.

8               Do you mean driver's license, by any

9          chance?  Is that what you're asking him?

10     Q.   Carlos, do you have any licenses?

11          MR. LEON:  Carlos, I'm directing you

12          not to respond until Mr. Mizrahi

13          clarifies what he means.  Otherwise, it

14          seems to be part and parcel of his other

15          inappropriate line of questions.  Do not

16          respond.

17     Q.   Carlos, do you have any electrical

18     licenses?

19          MR. LEON:  Objection to the form of

20          the question.  You may respond.

21          THE WITNESS:  I have only basic

22          knowledge.

23     Q.   So, do you have any professional

24     licenses?

25          MR. LEON:  Objection to the form of

Carlos Chincha
April 23, 2020                                                    71

1          the question.  And I'm directing my

2          client not to provide any information

3          concerning licenses, driving licenses or

4          residential licenses, but you can

5          otherwise answer Counsel's question.

6                THE WITNESS:  No.

7          Q.    Carlos, how old are you?

8          A.    Sixty-seven years old.

9          Q.    Carlos, do you use a cane to walk?

10               MR. LEON:  Objection to the form of

11         that question.  Mr. Chincha, you may

12         respond to that question.

13               THE WITNESS:  Not all the time.

14         Q.    How often do you use a cane to walk?

15               MR. LEON:  Objection to the form of

16         the question.  You may respond to that

17         question.

18               THE WITNESS:  When I go out to walk.

19         Q.    Besides using a cane when you go out

20    to walk, do you ever use a cane for any other

21    reason?

22               MR. LEON:  Objection to the form of

23         the question.  You may respond.

24               THE WITNESS:  No.

25         Q.    Are you currently receiving

```
 1    Social Security benefits?
 2              MR. LEON:  Jeez, it's like you don't
 3         listen.  Objection.  Do not answer.
 4              Mr. Mizrahi, I direct you to my
 5         prior objections about government
 6         benefits.  You're on notice.  I repeat it
 7         to you.  Improper line of questions,
 8         irrelevant and -- I'm going to stress
 9         this -- it's meant to annoy and harass my
10         client.
11              Do not answer the question, please.
12         Q.   Carlos, do you suffer from any
13    health issues?
14              MR. LEON:  Objection to the form of
15         the question.  You may respond.
16              THE WITNESS:  Diabetes.
17         Q.   Besides suffering from diabetes, do
18    you suffer from any other health issues?
19              MR. LEON:  Objection to the form of
20         that question.  You may respond.
21              THE WITNESS:  No.
22         Q.   Do you suffer from any physical
23    disabilities?
24              MR. LEON:  Objection to the form of
25         the question.  You may respond.
```

Carlos Chincha
April 23, 2020                                          73

```
 1                THE WITNESS:  Right now I get tired.

 2        Q.   What do you mean?

 3                MR. LEON:  Objection to the form of

 4        the question.  You may respond.

 5                THE WITNESS:  Depression.

 6        Q.   How long have you suffered from

 7   depression?

 8                MR. LEON:  You may respond.

 9                THE WITNESS:  I would say that

10        around six months ago.

11        Q.   Do you currently suffer from any

12   other physical disabilities besides getting

13   tired?

14        A.   No.

15        Q.   Do you have any issues with your

16   back?

17                MR. LEON:  Objection to the form of

18        the question.  You may respond.

19                THE WITNESS:  No.

20        Q.   What about with your knees?

21                MR. LEON:  Objection to the form of

22        that question.  You may respond to that

23        question.

24                THE WITNESS:  No.

25        Q.   What about with your heart?
```

 1              MR. LEON:  Objection to the form of

 2        that question.  You may respond to that

 3        question.

 4              THE WITNESS:  No.

 5        Q.   Do you suffer from any eye problems?

 6              MR. LEON:  Objection to the form of

 7        that question.  You may respond to that

 8        question.

 9              THE WITNESS:  Yes.

10        Q.   What eye problems?

11        A.   I have to use drops.

12        Q.   For what?

13        A.   Because, from the diabetes I suffer

14   from glaucoma.

15              MR. LEON:  Objection to the form of

16        the question.  He responded already,

17        obviously.

18        Q.   Please describe your glaucoma.

19              MR. LEON:  Objection to the form of

20        the question.  You may respond to that

21        question.

22              THE WITNESS:  I went to see the

23        doctor and they injected me, glaucoma.

24        Q.   What symptoms do you suffer?

25              MR. LEON:  You may respond.

```
 1              THE WITNESS:  I had to apply the

 2        drops because my vision got low.

 3        Q.   When you say your vision got low,

 4   what do you mean?

 5        A.   That I see a little blurry.

 6        Q.   When you say you see a little

 7   blurry, can you elaborate?

 8              MR. LEON:  You may respond.

 9              THE WITNESS:  The pressure on my eye

10        got high.

11              MR. LEON:  I'm sorry.  I just want

12        to make a clarification for the record.

13        I would just ask the translator to

14        translate the verb tense in which the

15        question and the answer is given.

16              There's been a couple of instances

17        in which the question is asked in the

18        present or my client responds in the

19        present and the translator is translating

20        in a different tense and vice versa.

21              So, I would just ask the translator

22        to translate consistent with the verb

23        tense that the question and the answer is

24        given in.

25              If you could repeat the question and
```

1        have the answer responded, because part

2        of if was cut out while his mic was off.

3        So, I think it might make more sense to

4        just start the question and answer over.

5            (Record read.)

6            THE WITNESS:  Yes.  Can you repeat

7        the question?

8            MR. LEON:  Madam Court Reporter,

9        could you please repeat the question?

10           (Record read.)

11           MR. LEON:  Objection to the form of

12       the question.  You may respond.

13           THE WITNESS:  Every eight hours I

14       have to apply the drops.

15       Q.   Because you have blurry vision,

16   right?

17           MR. LEON:  Objection to the form of

18       the question.  Mischaracterizing.  You

19       may respond.

20           THE WITNESS:  I had to apply them

21       every eight hours because my vision gets

22       blurry.

23       Q.   How long have you been suffering

24   from these eye problems?

25           MR. LEON:  Objection to the form of

```
 1          the question, mischaracterizing prior

 2          testimony.  You may respond to that

 3          question that you were just asked.

 4               THE WITNESS:  Now, like a year ago.

 5          Q.   Carlos, why do you use a cane?

 6               MR. LEON:  Objection, asked and

 7          answered.  You may respond to that

 8          question again.

 9               THE WITNESS:  For my balance.

10          Q.   Do you have issues with your

11   balance?

12               MR. LEON:  You may respond.

13               THE WITNESS:  Yes.  A little.

14          Q.   What issues do you have?

15               MR. LEON:  Objection to the form of

16          the question.  You may respond.

17               THE WITNESS:  I don't have much

18          balance.

19          Q.   And how long have you been like

20   that?

21               MR. LEON:  Objection to the form of

22          that question.  You may respond,

23          Mr. Chincha.

24               THE WITNESS:  One year.

25          Q.   Have you ever undergone any
```

1    surgeries?

2              MR. LEON:  Objection to the form of

3         the question.  You may respond.

4              THE WITNESS:  Yes.

5    Q.   What surgeries?

6              MR. LEON:  Same objection to this

7         line of questions.  Objection to the

8         form.  You may respond.  And I'm sorry.

9         Also objection, relevance.  You may

10        respond.

11             THE WITNESS:  On my eye, glaucoma.

12   Q.   When?

13             MR. LEON:  Objection to the form of

14        that question.  You may respond to that

15        question.

16             THE WITNESS:  April 2015.

17   Q.   So, you received the surgery in

18   April of 2015?

19             MR. LEON:  Objection to the form of

20        that question.  You may respond.

21             THE WITNESS:  Yes.  April 2015.

22   Q.   Before April of 2015 were you

23   receiving any treatment for your glaucoma?

24             MR. LEON:  Objection to the form of

25        the question.  You may respond to that

```
 1        question.

 2              THE WITNESS:  No.

 3        Q.   Where did you receive this

 4   treatment?

 5              MR. LEON:  Objection to the form of

 6        the question.  You may respond to that

 7        question.

 8              THE WITNESS:  At the hospital.

 9        Q.   Why did you receive this treatment?

10              MR. LEON:  Objection to the form of

11        the question.  You may respond.

12              THE WITNESS:  I went to receive an

13        examination or check for my vision.

14        Q.   How long had you been suffering from

15   vision problems before you received the

16   treatment?

17              MR. LEON:  Objection to the form of

18        the question and to the extent that it's

19        mischaracterizing prior testimony.  You

20        may respond.

21              THE WITNESS:  They checked my vision

22        and they told me that I need the surgery.

23        Q.   Carlos, how long have you been

24   suffering from eye problems before undergoing

25   that surgery?
```

1           MR. LEON:  Objection to the form of

2       that question and to the extent that it

3       mischaracterizes prior testimony.  You

4       may respond to that question,

5       Mr. Chincha.

6           THE WITNESS:  I didn't have any

7       vision problems.

8       Q.   Then why did you get surgery on your

9   eyes?

10          MR. LEON:  Objection, asked and

11      answered.  You may respond to that

12      question again.

13          THE WITNESS:  Because my sugar got

14      high and my vision got erased.

15      Q.   When did you start suffering from

16  vision loss?

17          MR. LEON:  Objection to the form of

18      that question and to the extent that it

19      mischaracterizes prior testimony.  You

20      may respond.

21          THE WITNESS:  It was one Monday.

22      Q.   Do you remember the month and the

23  year?

24          MR. LEON:  Objection to the form of

25      the question.  Ambiguous, unclear.  You

```
 1          may respond, Mr. Chincha.

 2                  THE WITNESS:  April of '15.

 3          Q.   Did you have any health issues

 4      before April of 2015?

 5                  MR. LEON:  Objection to the form of

 6          that question.  You may respond to that

 7          question.

 8                  THE WITNESS:  Only diabetes.

 9          Q.   Who treated you for your glaucoma?

10                  MR. LEON:  Objection to the form of

11          that question.  You may respond to that

12          question.

13                  THE WITNESS:  The eye doctor.

14          Q.   What was his name?

15                  MR. LEON:  Objection to the form of

16          the question.  You may respond to that

17          question.

18                  THE WITNESS:  Honestly, I don't

19          remember.

20          Q.   Where was he located?

21                  MR. LEON:  Objection to the form of

22          the question.  You may respond to that

23          question.

24                  THE WITNESS:  Jamaica Hospital.

25          Q.   What was the name of the hospital?
```

 1              MR. LEON:  Objection, asked and

 2         answered.  Objection to the form.  You

 3         may respond.

 4              THE WITNESS:  Queens Hospital Center

 5         in Jamaica.

 6         Q.   Carlos, were you treated at Jamaica

 7    Hospital Medical Center?

 8              MR. LEON:  Objection to the form of

 9         the question.  You may respond.

10              THE WITNESS:  Yes.  They told me

11         that -- that I went.

12         Q.   Carlos, how long have you been using

13    a cane?

14              MR. LEON:  Objection, asked and

15         answered multiple times.  Last time he's

16         answering this question.  You may

17         respond.

18              THE WITNESS:  Recently, about one

19         year ago, I told you.

20         Q.   Besides suffering from vision loss,

21    did you suffer from any other health issues in

22    2015?

23              MR. LEON:  Objection to the form of

24         that question and to the extent that it's

25         ambiguous.  You may respond.

1          THE WITNESS:  Yes.  I had another

2      surgery.

3      Q.   What surgery?

4          MR. LEON:  You may respond.

5          THE WITNESS:  They gave me a

6      pacemaker.

7      Q.   When did you receive that surgery?

8          MR. LEON:  Objection to the form of

9      the question.  You may respond.

10          THE WITNESS:  May 2015.

11      Q.   Were you also treated at Jamaica

12  Hospital Medical Center?

13          MR. LEON:  Objection to the form of

14      that question.  You may respond to that

15      question that Counsel just asked.

16          THE WITNESS:  Yes.

17      Q.   And why did you receive that

18  surgery?

19          MR. LEON:  Objection to the form of

20      the question.  You may respond.

21          THE WITNESS:  Because I was not able

22      to walk.

23      Q.   Prior to getting the surgery, how

24  long were you unable to walk for?

25          MR. LEON:  Objection to the form of

```
 1          that question.  Ambiguous.  You may

 2          respond if you understand it.

 3               THE WITNESS:  One day.

 4      Q.   Can you describe to me what

 5  happened?

 6               MR. LEON:  Objection to the form of

 7          that ambiguous question.  You may respond

 8          to that ambiguous question.

 9               THE WITNESS:  I fainted and I got

10          his care.  When I wanted to get up I

11          couldn't lift my legs.

12      Q.   Besides the eye surgery and besides

13  the pacemaker surgery, did you receive any

14  other medical treatment in 2015?

15               MR. LEON:  Objection to the form of

16          the question.  You may respond to that

17          question.

18               THE WITNESS:  No.

19               MR. LEON:  Before you go on, it's

20          now 1:16.  When we resumed we had agreed

21          to take a lunch break at 1:15, so I just

22          wanted to bring that up again.

23               MR. MIZRAHI:  Would you like to take

24          that break now?

25               MR. LEON:  Yeah, since it's 1:16.
```

```
 1              (Luncheon recess from 1:16 p.m. to

 2         1:54 p.m.)

 3              (Replacement interpreter joins

 4         deposition.)

 5  D E A N   M C C O N K E Y ,

 6         Spanish Language Interpreter, was

 7         thereupon duly sworn on oath to translate

 8         faithfully the questions asked and the

 9         answers given to the best of his ability.

10              MR. LEON:  I'd like to state just

11          one thing on the record.

12              For the translator, I would just

13          respectfully ask that any objections that

14          I make -- I'll keep them as short as

15          possible -- as well as any directions to

16          answer or not answer the question, that

17          they be translated.

18              We consulted the Judge and the Judge

19          is onboard with that instruction.

20              And I just want to, so that I don't

21          talk directly to my client, if you can

22          just advise my client that you're the

23          translator that will be taking over from

24          the other translator from here on.

25              THE INTERPRETER:  (Complies).
```

Carlos Chincha
April 23, 2020                                    86

```
 1    BY MR. MIZRAHI:

 2          Q.   Hi Carlos.

 3          A.   Hi.

 4          Q.   Carlos, besides receiving the

 5    treatment for your eye in April 2015 and the

 6    pacemaker treatment in May 2015, did you

 7    receive any other medical treatment in 2015?

 8               MR. LEON:  Objection, asked and

 9          answered.  You may answer one last time.

10          You may respond.

11               THE WITNESS:  No.

12          Q.   Besides the health issues that you

13    previously described, did you previously suffer

14    from any other health issues in 2015?

15               MR. LEON:  Objection to the form of

16          that question.  And it's also been asked

17          and answered, just like the previous

18          question, and I'm instructing my client

19          to respond to it one last time.

20               THE WITNESS:  No.

21          Q.   Besides the eye vision problem that

22    you described and the problem with your

23    pacemaker, did you suffer from any health

24    issues in 2016?

25               MR. LEON:  Objection to the form of
```

Carlos Chincha
April 23, 2020

```
 1            the question.  You may respond to that
 2            question.
 3                 THE WITNESS:  No.
 4            Q.   Besides suffering from the vision
 5     problems that you were describing and the
 6     balance issues that you were describing, did
 7     you suffer from any other health issues in
 8     2017?
 9                 MR. LEON:  Objection to the form of
10            that question and to the extent that it
11            mischaracterizes prior testimony.  You
12            may respond.
13                 THE WITNESS:  No.
14            Q.   Besides the vision issues that you
15     previously described and the balance issues
16     that you previously described, did you suffer
17     from any other health issues in 2018?
18                 MR. LEON:  Objection to the form of
19            that question and to the extent that it
20            incorrectly recites what you have said
21            previously.  You may answer that
22            question.
23                 THE WITNESS:  No.
24            Q.   Besides the vision issues that you
25     previously described and the balance issues
```

 1    that you previously described, did you have any

 2    other health issues in 2018?

 3              MR. LEON:  Objection to the form of

 4         that question, objection to the extent

 5         that it mischaracterizes prior testimony

 6         and, finally, asked and answered.  You

 7         may respond.

 8              THE WITNESS:  No.

 9         Q.   Carlos, you testified that you

10    received a surgery in May 2015 for a pacemaker;

11    is that correct?

12              MR. LEON:  Objection, asked and

13         answered.  You can answer one more time.

14              THE WITNESS:  Yes.

15         Q.   After you received the surgery in

16    May 2015, were you able to stand for longer

17    periods of times?

18              MR. LEON:  Objection to the form of

19         that question.  It's ambiguous.  You may

20         respond if you understand it.

21              THE WITNESS:  Yes.

22         Q.   Carlos, after you received the eye

23    surgery in April 2015 were you able to stand

24    for long periods of time?

25              MR. LEON:  Objection to the form of

Carlos Chincha
April 23, 2020

89

1           the question.  It's ambiguous.  You may

2           respond to that question if you

3           understand it.

4                THE WITNESS:  Can you repeat the

5           question, please?

6      Q.   Carlos, after you received the eye

7  surgery in April of 2015, were you able to

8  stand for long periods of time?

9                MR. LEON:  Objection to the form of

10          the question.  It's ambiguous.  You may

11          respond to that question if you

12          understand it.

13               THE WITNESS:  Yes.

14     Q.   Carlos, did the surgery that you

15  received in May 2015 negatively impact your

16  ability to engage in physical activities?

17               MR. LEON:  Objection to the form of

18          that question, compound and ambiguous.

19          You may respond to the extent that you

20          understand that question.

21               THE WITNESS:  Can you repeat the

22          question?

23     Q.   Did the surgery that you received in

24  May 2015 negatively impact your ability to

25  engage in physical activity?

Carlos Chincha
April 23, 2020

90

```
 1              MR. LEON:  Objection to the form of
 2         that question.  It's more ambiguous than
 3         the previously withdrawn question.  You
 4         may respond to that question,
 5         Mr. Chincha.
 6              THE WITNESS:  No.
 7         Q.  Do you currently engage in any
 8    physical activities?
 9              MR. LEON:  Objection to the form of
10         that question.  Super confusing.  You may
11         respond.
12              THE WITNESS:  I go walking.
13         Q.  Do you engage in any other physical
14    activities?
15              MR. LEON:  Objection to the form of
16         that question.  Confusing, ambiguous.
17         You may respond.
18              THE WITNESS:  No.
19         Q.  Are you able to engage in any other
20    physical activities besides walking?
21              MR. LEON:  Objection to the form of
22         that question.  Confusing, ambiguous and
23         also highly irrelevant.  You may respond
24         to this question and this line of
25         questions one last time.
```

```
 1              And just to clarify, like I said,
 2         the last part, that he's going to answer
 3         this line of questions one last time.
 4              THE WITNESS:  No.
 5         Q.   Earlier today, Carlos, you testified
 6    that you get tired frequently; is that correct?
 7              MR. LEON:  Objection to the form of
 8         that question and to the extent that it
 9         mistakenly recounts prior testimony.  You
10         may respond.
11              THE WITNESS:  Now, recently, not
12         before.
13         Q.   Do you need to rest during the day
14    because of your health problems?
15              MR. LEON:  Objection to the form of
16         the question to the extent that it
17         assumes evidence and testimony not
18         previously acknowledged or admitted in
19         this action.  You may respond.
20              THE WITNESS:  Can you repeat the
21         question?
22         Q.   Do you need to rest during the day
23    because of your health problems?
24              MR. LEON:  Objection to the form of
25         the question and to the extent that it
```

```
 1            misconstrues prior testimony or assumes

 2            prior evidence and testimony that has not

 3            been admitted into this action or this

 4            deposition.  Subject to those objections,

 5            you may respond.

 6                 THE WITNESS:  No.

 7       Q.   Did you have to rest during the day

 8  because of the health problems that you've

 9  previously described in 2015?

10                 MR. LEON:  Objection to the form of

11            the question.  Confusing, lacks scope --

12            limited scope or clear scope.  You may

13            respond.

14                 THE WITNESS:  Yes.

15       Q.   And how long did you rest during the

16  day in 2015?

17                 MR. LEON:  Objection to the form, to

18            the extent that it assumes facts in

19            evidence not previously admitted, to the

20            extent that it is confusing and

21            misleading.  You may respond if you

22            understand the question.

23                 THE WITNESS:  Could you repeat the

24            question?

25       Q.   How long did you rest during the day
```

 1    in 2015?

 2              MR. LEON:  Objection to the form of

 3         that question --

 4              MR. MIZRAHI:  You've already

 5         objected.  You don't need to -- you've

 6         already objected.  You've asked me to

 7         repeat it.  You've already objected to

 8         the question.

 9              MR. LEON:  Jason.  Jason.  Calm

10         down.  I know being ill-informed gets you

11         flustered, but please, don't yell at me.

12         Don't yell at me.

13              And you said the question again, so

14         I'm objecting to your new question, which

15         is still bad.  So, I'm directing my

16         client --

17              MR. MIZRAHI:  It's the same

18         question.  It's the same question.

19              MR. LEON:  Jason, let's continue --

20         no.  It's actually not.

21              So, I'm going to continue objecting

22         to an improper line of questions, as

23         you've done throughout this deposition,

24         and while you're going back and forth

25         with me, my client is going to wait until

```
 1    we're done, a clear question's asked --
 2         I'm sorry.  Did you just mute me?
 3    Did you just mute me?  Jason, did you
 4    just mute me?
 5         Madam Court Reporter, can you hear
 6    me?
 7         THE REPORTER:  Yes, I can.
 8         MR. LEON:  Okay.  Because, I just
 9    saw "Muted by the host," so I'm not sure,
10    Jason, if you have access and you're
11    muting me.  Because, if that's what
12    you're doing, then we're not going to
13    continue this until you stop doing that.
14         So, Jason, were you muting me?
15    Jason, were you muting me?
16         MR. MIZRAHI:  No.  I wasn't muting
17    you.
18         MR. LEON:  Okay.  Madam Court
19    Reporter and Mr. Translator and my
20    client, if at any point in time I'm
21    talking and it seems like I went mute,
22    please let me know so we can leave a
23    clear record.
24         So, what I was saying before is,
25    Mr. Mizrahi, you asked a question, I
```

 1        thought it was not properly phrased, I

 2        objected, directing my client to respond.

 3            You then proceeded to repeat the

 4        question not quite the same, I objected,

 5        repeated my objection, and then you

 6        turned bright red and started yelling at

 7        the top of your lungs when I was

 8        objecting.

 9            Don't do that.  It's bad, it's not

10        appropriate in this sort of action.

11            Please repeat the question for my

12        client for him to respond and so that I

13        can make my objection clear for the

14        record.

15        Q.   Carlos, how long did you rest during

16   the day in 2015?

17            MR. LEON:  Objection to the form of

18        that question.  It's confusing, it's

19        unclear and it appears to assume evidence

20        and testimony that has not been

21        previously admitted in this deposition.

22            Subject to those objections,

23        Mr. Chincha, you may respond.

24            THE WITNESS:  (Speaking in Spanish.)

25            MR. LEON:  Can you translate that,

```
 1    please?

 2         THE WITNESS:  The gentleman is

 3    confusing.

 4         MR. LEON:  "The gentleman is

 5    confusing me" is what my client just said

 6    in Spanish.

 7         He's referring to you, Mr. Mizrahi.

 8    So, I'd like to state that for the record

 9    that my client is claiming that you are

10    confusing him.  So, please stop confusing

11    my client and ask questions.

12         MR. MIZRAHI:  Madam Court Reporter,

13    could you please repeat back the line of

14    questioning beginning from, "Did you need

15    to rest during the day because of the

16    health problems that you previously

17    described in 2015?"

18         (Record read.)

19         MR. MIZRAHI:  That's fine.

20         MR. LEON:  Sorry.  I'm going to take

21    a quick break right now, because I need

22    to use the bathroom.

23         MR. MIZRAHI:  Mr. Interpreter, if

24    you could just please --

25         MR. LEON:  Jason, Jason, I'm going
```

```
 1   to go take a break.
 2        MR. MIZRAHI:  There's a question
 3   pending.
 4        MR. LEON:  No, there actually isn't
 5   a question pending.
 6        MR. MIZRAHI:  There is.
 7        MR. LEON:  No, no.  There actually
 8   isn't.  You've asked a question, he's
 9   answered.  There's not a new question
10   pending here.
11        So, we're going to take a break
12   right now, okay, because you asked the
13   question a billion times and he responded
14   to it.
15        MR. MIZRAHI:  There's a question
16   pending.
17        MR. LEON:  Okay.  How about this.
18   Right after he answers your question we
19   are taking a break.
20        If you do what I think you're going
21   to do, which is start asking another one
22   as soon as we're going to take the break,
23   I'm going to cut you off and tell you
24   we're done and we're taking the break,
25   because I've asked for a break.
```

```
 1        So, you're going to finish your
 2   question, ask it again and he'll answer
 3   it again.  And at that point we're taking
 4   a break.
 5        Mr. Translator, could you please
 6   translate that directive to my client.
 7        THE INTERPRETER:  (Complies.)
 8        MR. LEON:  That's it.  There's no
 9   question pending.
10        MR. MIZRAHI:  There's a question
11   pending.  Could you please repeat the
12   last question that was pending?
13        MR. LEON:  And please, if there's a
14   response from my client in any shape or
15   form, please read that out loud, as well,
16   because I recall there being an answer.
17        MR. MIZRAHI:  Madam Court Reporter,
18   if you could just repeat back the line of
19   questioning with the answer and if the
20   interpreter could please translate that
21   back for the client.
22        THE INTERPRETER:  Sure.
23        (Record read.)
24        MR. MIZRAHI:  If you could please
25   repeat back the line of questioning
```

```
 1   asking if he rested during the day in

 2   2015.

 3        MR. LEON:  I'm objecting in advance,

 4   because that's a confusing thing for

 5   everyone.  So, I'm objecting to the fact

 6   that it's summarizing a whole bunch of

 7   stuff.  So, I'm going to start with that

 8   objection and wait for the question to

 9   come in.

10        (Record read.)

11        MR. LEON:  Are we reading the answer

12   back?  Are we reading the answer back,

13   just to be clear?

14        THE REPORTER:  Are you wanting all

15   the questions and answers read from then

16   until now?

17        MR. MIZRAHI:  Let's take a bathroom

18   break.

19        MR. LEON:  Im sorry?

20        MR. MIZRAHI:  Do you need to take a

21   bathroom break?

22        MR. LEON:  No.  I'd rather finish

23   this right now, then I'll go use the

24   bathroom, so there won't be a question

25   pending and I won't be causing any
```

 1   issues.  I want to work with you.  Get

 2   that question out.

 3       I'm sorry.  Could you repeat the

 4   question, the last question, so that my

 5   client could respond and we can take that

 6   break?

 7       THE REPORTER:  The very last one or

 8   the line of questioning?

 9       MR. LEON:  The very last question.

10       MR. MIZRAHI:  Madam Court Reporter,

11   you don't have to listen to him --

12       MR. LEON:  So, you're withdrawing

13   the question?  Are you withdrawing the

14   question?  Because, otherwise there is a

15   pending question and my client needs to

16   respond to it and I'm asking the court

17   reporter to read it back.

18       Just because you're paying for the

19   transcript doesn't mean you order

20   everyone around here.

21       So we'll leave it clear for the

22   record, are you withdrawing the question?

23   Yes or no.

24       MR. MIZRAHI:  No.  The questions's

25   still posed.

1        MR. LEON:  Okay.  So then, let the

2    court reporter repeat the question so he

3    can answer it so that there's no pending

4    question when I go to use the bathroom.

5    God forbid that should happen.  So, I

6    want to clear it up before we go on our

7    break.

8        Please don't roll your eyes, I'm

9    being very sincere with you.  You're

10   taking your time sipping your tea.

11   What's your response to my question?

12       MR. MIZRAHI:  Are you finished?

13       MR. LEON:  Are you going to ask the

14   question?  Are you going to have the

15   question read back?  Are you going to

16   allow my client to respond to it or are

17   you withdrawing the question?

18       Because, if you're not going to ask

19   the court reporter to repeat it and

20   you're going to tell her not to repeat

21   the question, then I see that as

22   withdrawing the question.

23       MR. MIZRAHI:  Well, we can withdraw

24   the question.  I'll ask it again.

25       MR. LEON:  Okay.  We're taking a

```
 1   break.

 2       THE INTERPRETER:  How long is the

 3   break?

 4       MR. MIZRAHI:  We'll take a

 5   two-minute.

 6       MR. LEON:  No, I'm sorry.  I'm

 7   sorry.  You're not going to dictate how

 8   long I'm going to use the bathroom for.

 9       MR. MIZRAHI:  We're going to take --

10       MR. LEON:  No, no.  Jason, you're

11   not going to dictate how long I'm going

12   to use the bathroom for.  So, I'm taking

13   a bathroom break.  I hope you can respect

14   biological necessities.  Please.  Please.

15       I'm going to take a five- to

16   ten-minute break and I'm going to ask my

17   client -- I'm going to ask my client --

18   I'm going to ask my client -- I'm going

19   to ask my client -- I'm going to ask my

20   client -- stop interrupting.  Stop

21   interrupting.  Stop interrupting.  I'm

22   going to ask my client to turn off the

23   video --

24       THE INTERPRETER:  I can't hear

25   anymore.
```

     1        MR. MIZRAHI:  He needs to go to the

     2   bathroom.  I'm not going to waste time

     3   with him explaining --

     4        THE INTERPRETER:  The Witness cannot

     5   hear us.

     6        MR. LEON:  Okay.  I want this to be

     7   translated, as well.

     8        Jason, you've done this now three

     9   times and I'm calling you out on it, that

    10   when I've been talking on the record you

    11   have abused the Zoom host -- now you're

    12   walking out.  I'm going to put this

    13   statement on the record.

    14        You have muted me when I've been

    15   talking in order to stop me from making

    16   statements on the record.  You do that

    17   again and this deposition will not

    18   continue, Jason.

    19        Do you understand me?  I'm talking

    20   to you.  Because, you don't get to do

    21   that.  You don't get to shut my mic off

    22   when I'm making a statement on the record

    23   on behalf of my client.

    24        How many more legally inappropriate

    25   things can you do in this deposition?

```
 1    You've already been told by the federal

 2    court judge to stop asking inappropriate

 3    questions.  Now you're cutting off my

 4    mic?

 5         MR. MIZRAHI:  Yeah.

 6         MR. LEON:  No.  You don't get to do

 7    that.

 8         MR. MIZRAHI:  You're wasting

 9    everyone's time, so I'm cutting off your

10    mic.

11         MR. LEON:  No, no.

12         MR. MIZRAHI:  We're taking five

13    minutes.

14         MR. LEON:  No, no.  So, you admit

15    that you cut my mic off?  You admit that

16    you cut my mic off?

17         MR. MIZRAHI:  We'll come back in

18    five minutes.

19         MR. LEON:  Have you admitted -- do

20    you admit that you cut my mic off

21    repeatedly now, at least two to three

22    times?  Do you admit it?

23         Okay.  You do that again,

24    deposition's over and you get to make an

25    application to the Judge.  And you walked
```

 1    away -- I'm still talking on the record,

 2    the court reporter can get this.

 3        You do not get to cut my mic.  You

 4    do that again, I can't trust that the

 5    transcript is accurate and no fault of

 6    the court reporter, the translator or my

 7    client.

 8        You do that again -- and just to

 9    clarify, Mr. Mizrahi has walked away.

10    He's probably just a couple feet away

11    from the camera, can hear me.  If he does

12    that again this deposition's over,

13    because I'm not going to allow that to

14    happen.  It's inappropriate and if you do

15    it again I will request monetary

16    sanctions against you and your firm.

17        Hello, Mr. Mizrahi.  You returned as

18    soon as that was done being translated,

19    so I'm going to assume you heard all

20    that.  Thank you.  We're going to be

21    taking that break now.

22        Mr. Chincha, please have your

23    daughter cut off the mic and the video

24    while we take that break to stop Counsel

25    from engaging in anything that might be

```
 1   appropriate.  I am now exiting.
 2        MR. MIZRAHI:  Before we go off the
 3   record I'd just like to make a point that
 4   Counsel cannot use --
 5        MR. LEON:  We're off the record?
 6   We're off the record?
 7        THE REPORTER:  No.  We're not off
 8   yet.
 9        MR. LEON:  Oh, okay.  So,
10   Mr. Chincha, please have your daughter
11   cut your video and your mic so that
12   Counsel can have a conversation on the
13   record.
14        Okay.  All right.  We're back on the
15   record.  So, my client is not on this
16   call right now or this part of the Zoom
17   deposition.
18        What were you saying, Jason?
19        MR. MIZRAHI:  I would like to make a
20   quick statement before we break.
21        MR. LEON:  I'm listening.
22        MR. MIZRAHI:  I'd like to make a
23   statement for the record that counsel is
24   prohibited from engaging in any ex parte
25   conversations or consultations with his
```

 1    client during a break.

 2        If he needs to take a break to use

 3    the bathroom, he's welcome to do so.

 4    He's prohibited from engaging in any

 5    counseling or consulting to his client or

 6    coaching of his client at any time

 7    while on break.

 8        Thank you.  We can take a break.

 9        MR. LEON:  I'm going to say this and

10    if you walk away like you were doing

11    before, I'll just finish.

12        I'm not saying that we were going to

13    do that, because I'm going to use the

14    bathroom, but I do not accept your

15    characterizations of what you think is

16    going on and I don't agree with your

17    legal conclusion.  So, stating that for

18    the record.

19        I will now take the break, use the

20    bathroom and return as quickly as

21    possible for you, Jason.  Thank you.

22        THE INTERPRETER:  Is this going to

23    be a five-minute or a ten-minute break?

24    Just want to know.

25        MR. LEON:  I'd say -- let's do ten

```
 1   minutes.  Thank you.

 2        MR. MIZRAHI:  We're going to go

 3   back -- a quick bathroom break, five

 4   minutes.

 5        MR. LEON:  No, no, no.  I'm sorry.

 6   No, no.  No, no.  I'm telling you, Jason,

 7   right now, I'm not returning in five

 8   minutes.  I just told you, ten minutes.

 9        You can say whatever you want.  You

10   can be back in five minutes, I will be

11   back in ten minutes.  Thank you.

12        It is now 2:23.  As of the moment

13   that I finish this sentence I'm cutting

14   my mic and my video to avoid this

15   completely nonsensical back and forth.

16   Thank you.

17        (Recess taken.)

18        (Off-the-record discussion held.)

19        MR. LEON:  Mr. Mizrahi, as I just

20   told you right before going back on the

21   record, given the inappropriate things

22   that you did, I've been advised --

23        Well, first of all, from my personal

24   experience, you un-mic'd me at least two

25   to three times when I was making
```

```
 1   statements on the record.

 2        Whether or not you thought I was

 3   going on too long about it, that's so

 4   inappropriate to un-mic me.

 5        And two, I just confirmed with my

 6   client and I asked his daughter that you

 7   did repeatedly attempt to and un-mic'd

 8   his feed when I took the break.  And that

 9   is really something that you've been

10   doing all along to me, so it's not

11   surprising that you would do something

12   about it with them.

13        I want a court ruling saying that,

14   regardless of who's taking over, that

15   you're not going to take over host

16   privileges and you're not going to do

17   this again.

18        So, I can't go on in good faith,

19   because I don't know how much has been

20   cut off because of what you've done.

21        And I don't want to debate about it,

22   we don't need to recount every last

23   question.  There's not enough time for

24   that.  I'm going to call Judge Tiscione's

25   chambers.
```

 1        And all this time that we're wasting

 2   is on you.  Our position is that you're

 3   waiving your time because of the

 4   inappropriate sanctionable --

 5   sanctionable actions that you've --

 6        MR. MIZRAHI:  (Inaudible), but hurry

 7   up.

 8        MR. LEON:  I'm sorry.  What was

 9   that?

10        MR. MIZRAHI:  You're wasting

11   everybody's time.

12        MR. LEON:  Oh.  Okay.  And obviously

13   I disagree, Jason.

14        MR. MIZRAHI:  Yeah.

15        MR. LEON:  Yeah.  So, I'm going to

16   call right now.  I'm just pulling up

17   Judge Tiscione's number and I'm going to

18   dial right away.  One moment.

19   Okey-dokey.

20        And please, Madam Court Reporter, if

21   you can keep all of this on the record.

22        (The following call to Magistrate

23   Judge Steven Tiscione's chambers took

24   place:)

25        UNIDENTIFIED SPEAKER:  Good

 1   afternoon, Magistrate Judge Tiscione's

 2   chambers.

 3        MR. LEON:  Hi.  My name is Louis

 4   Leon from the Law Offices of William

 5   Cafaro.  I represent the Plaintiff in a

 6   matter captioned Chincha v. Patel.

 7        Actually, the parties called earlier

 8   today.  There was a discovery dispute at

 9   a deposition that Defendant is partaking

10   in of my client.  And I am Plaintiff's

11   counsel.  I'm the one defending the

12   deposition.

13        I'm calling regarding an extremely

14   urgent sensitive matter that we need to

15   address with the Judge.  It's an issue so

16   important that I think it could

17   potentially result in the deposition

18   being cancelled.

19        UNIDENTIFIED SPEAKER:  What is the

20   number to reach you, please?

21        MR. LEON:  Sure.  I can give you my

22   cellphone number.  XXX-XXX-XXXX.

23        UNIDENTIFIED SPEAKER:  Do you have a

24   court reporter present?

25        MR. LEON:  Yes, I do.

```
 1        UNIDENTIFIED SPEAKER:  Speakerphone

 2   capabilities?

 3        MR. LEON:  Yes.

 4        UNIDENTIFIED SPEAKER:  Thank you.

 5        (The call was concluded.)

 6        MR. LEON:  Madam Court Reporter, I

 7   would just ask that any -- I'm sure

 8   Defense counsel won't object to this --

 9   any cellphone numbers given from either

10   Defense counsel or myself be redacted for

11   the record, just for confidentiality.

12        I'm going to wait until Judge

13   Tiscione calls us back --

14        MR. MIZRAHI:  We're going to move

15   forward with the deposition.

16        MR. LEON:  Well, Jason, I'm glad

17   that that's what you want.  But, when you

18   do something as inappropriate as what

19   you've been doing with no basis

20   whatsoever --

21        MR. MIZRAHI:  Louis --

22        MR. LEON:  No, no.  Jason, Jason,

23   I'm not debating with you, I'm telling

24   you how this is going to happen.  You can

25   do it, but you're not going to be able to
```

```
 1    proceed without me or my client.
 2        You did something inappropriate that
 3    the Judge needs to rule on.  If the Judge
 4    determines that it's fine to un-mic
 5    people when you don't want to hear them
 6    on the record or try to listen in to my
 7    client's private conversations, if he's
 8    even having one, if the Judge thinks
 9    that's appropriate, then we'll proceed
10    right away.
11        MR. MIZRAHI:  Louis, we're going to
12    move forward with the deposition --
13        MR. LEON:  Great, Jason.  Then you
14    can continue.  We're going to wait and
15    I'm going to give him -- let's give it
16    15 --
17        MR. MIZRAHI:  No.
18        MR. LEON:  Okay.  Jason, I'm not
19    asking you for your opinion, I'm not
20    asking for your perspective.  I'm telling
21    you that this is such an egregious
22    violation of your duties as an attorney
23    in federal court that I'm not going to
24    continue while you continue running afoul
25    of every decency law or statute that
```

```
 1   there is.
 2        Please.  We're going to wait for the
 3   Judge to call, because I'm not going to
 4   have this argument over and over.
 5        As of right now I don't know how you
 6   may have tainted the record.  And you
 7   knew exactly what you were doing.  You
 8   knew exactly what you were doing.  And
 9   this is all, again, on the record.
10        So, we're going to wait, I'm going
11   to come back on the record around --
12        MR. MIZRAHI:  You're wasting
13   everybody's time.
14        MR. LEON:  No, no, Jason.  You
15   wasted everyone's time the moment you
16   starting doing unethical things like
17   trying to listen in to my client's room
18   and see if he was talking.  Because,
19   that's what it was about, right?
20        Because, when we went -- right
21   before going off the record -- actually,
22   that might be a call right there.
23        (The following call with Magistrate
24   Judge Steven Tiscione took place:)
25        MR. LEON:  Hello.
```

Carlos Crinigacha
April 23, 2020                                     115

```
 1        THE COURT:  Good afternoon.

 2        MR. LEON:  Hello, Justice Tiscione.

 3   This is Louis Leon, Plaintiff's counsel.

 4   I have you on speaker near the laptop.

 5        The court reporter, Defense counsel

 6   and the translator are currently on the

 7   other video call line, my client is not

 8   on the line right now.

 9        I wanted to bring up something that

10   I can only characterize as -- and I'm

11   really not being dramatic -- one of the

12   most egregious things I've ever seen an

13   attorney do in a deposition that warrants

14   a judicial ruling, because there's no

15   other way around it.

16        At some point at the beginning of

17   this case Mr. Jason Mizrahi took over

18   hosting privileges of the Zoom

19   application.  I thought nothing of it.

20        But, throughout at least the last

21   hour, when I was making objections or

22   statements on the record, I saw him --

23   because it says to me that he did it --

24   he would un-mic me while I was making

25   objections so that no one else could hear
```

```
 1   what I was saying.

 2        He did that repeatedly and I called

 3   him out on it and I even put it on the

 4   record that he's done it at least three

 5   times.

 6        Adding insult to injury -- and this

 7   is, perhaps, the most egregious thing

 8   that he just did -- while maintaining

 9   those hosting privileges there was a

10   question he asked my client and I said,

11   "I'm going to take a bathroom break."

12        He didn't like the fact that we were

13   taking a break, he wanted to continue,

14   and he told my client, "Under no

15   circumstances can you talk to your

16   attorney."

17        Fine.  I stated, "Look, we're not

18   going to talk, I have to use the

19   bathroom, but just, I don't agree with

20   your characterization," but we go off the

21   record.

22        As I'm about to go to the bathroom I

23   get a call from my client and his

24   daughter, who's helping him, saying

25   that -- and I can have his daughter come
```

1   in and respond and tell Your Honor this,

2   because I just clarified this with her --

3   Mr. Mizrahi purposely and repeatedly

4   un-mic'd --

5       So, I always ask my client to un-mic

6   his feed and to close the video so that

7   nothing can be heard or seen from his

8   room.

9       Mr. Mizrahi clearly, thinking that

10  my client was going to have a private,

11  confidential, privileged conversation

12  with me, on three or four occasions

13  attempted to un-mic his feed.  My

14  client's daughter will verify that.

15      And this is one of the most

16  egregious things ever, trying to, like,

17  hack someone's phone and listen to an

18  attorney and client talk.

19      I can't continue if this is what

20  he's going to do and we need a ruling

21  saying that this is inappropriate and

22  that, you know, any absences of the

23  record created by this, it's going to be

24  held against Defendants.

25      And Mr. Mizrahi can't justify why

 1    he's done any of this.  When I asked him

 2    "Why did you un-mic me" when I was on the

 3    record, he said, "Oh, you're talking too

 4    much, we're done, you're talking too

 5    much, I'm cutting you off."

 6         Are you serious?  Like -- that's the

 7    inappropriate thing he's done.

 8         It's egregious and we think it's

 9    sanctionable, Your Honor.  I've never had

10    an attorney do this to me.  I'm a pretty

11    young attorney, but I've never seen any

12    attorney ever do anything like that.

13         So, I will let Mr. Mizrahi defend

14    his actions that are clearly on the

15    record.

16         THE COURT:  Okay.

17         MR. MIZRAHI:  Yeah, Judge, I'm sorry

18    that we're going to have to burden you

19    again for the second time today for an

20    issue that is obviously -- could be

21    avoided.

22         The fact of the matter is that, ever

23    since this deposition has been commenced,

24    Plaintiff's attorney has been

25    unnecessarily prolonging this deposition.

 1        He's been objecting to every single

 2   line of questioning incessantly.  He's

 3   been instructing his client and guiding

 4   his client.

 5        The objections that have been raised

 6   are multiple objections as to form, which

 7   he then says are confusing before his

 8   client ever raises any issues with

 9   wording or with the form of the question

10   or whether or not he understands them,

11   which leads his client to then say that

12   they're confusing.  This has been going

13   on the entirety of the deposition.

14        More recently we've now been taking

15   a 20-minute break for what Plaintiff's

16   counsel has described as a bathroom

17   break.  I have no idea what he's talking

18   about with muting or un-muting anybody's

19   microphone.

20        MR. LEON:  That's on the record.

21   Let's have the reporter read it back.

22   And that's a lie and you can be held

23   accountable for lying about this.

24        You admitted it on the record,

25   Mr. Mizrahi.  Should we ask the court

```
 1   reporter to reed it back?

 2        MR. MIZRAHI:  Mr. Leon had requested

 3   that I give host privileges to one of the

 4   court reporters.  One of the court

 5   reporters has host privileges.

 6        We are now wasting another half an

 7   hour since we've gone on break to deal

 8   with this issue and it's a half an hour

 9   that we're going to have to tack back on

10   to the --

11        MR. LEON:  No.

12        MR. MIZRAHI:  -- deposition time.

13        He's clearly been prolonging this

14   deposition from the beginning with his

15   unnecessary objections and he's

16   prolonging it now with a phone call that

17   has been avoided or could have been

18   avoided.

19        He's asked me to transfer the host

20   privileges to somebody else, I

21   transferred the host privileges to

22   somebody else so there weren't any other

23   issues.  There's really no reason to be

24   having this phone call --

25        MR. LEON:  Your Honor, I could have
```

 1   my client's daughter answer your

 2   questions under oath about what just

 3   happened, and Mr. Mizrahi clearly stated

 4   on the record that he had muted me

 5   because I'm ranting, because I'm talking

 6   too much.

 7       There's no excuse -- I mean,

 8   Mr. Mizrahi has a habit of lying to

 9   Your Honor and this is prime center the

10   type of example that Your Honor needs to

11   consider.

12       We can go back to the record where

13   he admits it.  And now he's saying, "I

14   don't know what that's about"?

15       How much more can he get away with

16   in this case lying to a federal judge,

17   lying on the record?  There has to be

18   consequences and he can't be allowed to

19   continue doing this.

20       Because, he did this to me three

21   times on the record and he did it to my

22   client off the record in an effort to

23   listen in on conversations that he

24   thought that my client might be having

25   with me.

```
 1        THE COURT:  Okay.  What exactly is
 2   going on with this Zoom thing?  You've
 3   got -- I guess, Mr. Mizrahi, you're the
 4   one in charge of deciding, like, who's
 5   being, you know, allowed to talk on it or
 6   not?  What is --
 7        MR. MIZRAHI:  No, Your Honor.  The
 8   court reporter is.
 9        MR. LEON:  That's now.  That's now.
10   Not before.  Now.  But, before it wasn't
11   the case.
12        And I'll gladly file a letter
13   providing the evidence from the
14   transcript that Mr. Mizrahi insists that
15   I'm lying or I'm misreading or
16   misunderstanding what happened.
17        THE COURT:  Okay.  Well, you're
18   going to have to explain that, because, I
19   agree, I'm not entirely --
20        MR. LEON:  Oh, I'll explain it,
21   Your Honor.
22        In the Zoom application the host,
23   the person who essentially has privileges
24   over everyone and everything, can dictate
25   what each person's setting is.
```

```
 1        On the bottom left screen of the

 2   Zoom application there's a mic where you

 3   can click "Mute" and you can click "Stop

 4   Video."  It does not allow you out of the

 5   Zoom application.

 6        But, when there's a break, everyone,

 7   including Mr. Mizrahi, the translator,

 8   both translators, the court reporter and

 9   anyone else, to avoid being heard in

10   their privacy when no one is supposed to

11   be listening, they all knock out their

12   video, they hit a setting that says "Stop

13   Video" and they hit "Mute" to stop anyone

14   from hearing.

15        Because Mr. Mizrahi had hosting

16   privileges up until literally five or ten

17   minutes ago, when I said I was going to

18   call the Judge, I wasn't taking a

19   bathroom break, I said I was going to

20   have to consider this -- I said I was

21   going to use the bathroom, but also

22   consider the implications of this, during

23   that break I got an urgent call from my

24   client telling me that Mr. Mizrahi had

25   been un-muting his side.  And his
```

```
 1   daughter can confirm that.

 2        And it says -- how did my client

 3   know that it was him?  It says, "The

 4   host, Jason Mizrahi, is trying to un-mute

 5   your feed."  And he repeatedly did it.

 6   And my client's daughter had to

 7   repeatedly mute it to avoid him from

 8   listening to my client.

 9        And it seems to me that the only

10   reason this was being done is because

11   Mr. Mizrahi was under some false

12   impression that I was having some

13   conversation with my client which would

14   be privileged and confidential.

15        And if Mr. Mizrahi insists on lying,

16   I will insist on submitting an

17   application to the Court proving that he

18   admitted that he had cut my mic several

19   times and has played with the mic at

20   least on the record.

21        And subsequently he denied it, that

22   it happened off the record, but I will

23   gladly have my client's daughter testify

24   or answer your questions on the record,

25   Your Honor.
```

```
 1          THE COURT:  Look, you know what?

 2   For right now let's finish this

 3   deposition.  Give the court reporter the

 4   hosting privileges so that nobody else

 5   messes with the mic.

 6          Once you have the transcript, if you

 7   want to make some kind of a motion based

 8   on his cutting off your objections or

 9   whatever...

10          You know, without seeing it in front

11   of me it's really hard for me to make any

12   kind of a ruling on that at this point.

13          But, for the rest of this

14   deposition, only the court reporter

15   should have hosting privileges in terms

16   of mic'ing or un-mic'ing people.  Okay?

17          MR. LEON:  Yes, Your Honor.  Could I

18   actually ask just one quick clarification

19   to avoid having Mr. Mizrahi and I making

20   another call?

21          This deposition started at 10:30.

22   Mr. Mizrahi is, for all intents and

23   purposes, I would say, is to blame for

24   all these delays.

25          I don't agree that we should be
```

 1   going until after, like, 6:00 o'clock

 2   with a deposition if all these phone

 3   calls have had to do with Mr. Mizrahi not

 4   doing what he was supposed to do.

 5        Can we just state that we're not

 6   going to go until 7:00 or 8:00 o'clock at

 7   night or until such time that Mr. Mizrahi

 8   thinks it's satisfactory?

 9        It's seven hours and 5:30 is

10   actually seven hours.  We're willing to

11   go until 6:00 to accommodate for a lunch

12   break of 30 minutes, but I think that's

13   all we should have to go.

14        Because -- this is unnecessary.  I

15   agree.  But, it's because Defense counsel

16   did something wrong and unnecessary.

17        MR. MIZRAHI:  Your Honor, we've been

18   on the phone now and we've been on a

19   break now for a half an hour and for the

20   entirety of the deposition Mr. Leon has

21   been instructing and improperly guiding

22   his client.  We're wasting so much time.

23        MR. LEON:  He hasn't given one

24   example of how I did that.  Not one.  And

25   that's the most significant thing.

Carlos Chinchilla
April 23, 2020                                              127

 1        MR. MIZRAHI:  He's now taken an hour

 2   and a half of everybody's time.

 3        MR. LEON:  You made the first phone

 4   call and it got denied, I made the second

 5   phone call and now we're here because of

 6   what you were doing.  It's not my fault,

 7   it's not my client's fault.  He has been

 8   on this since 10:30 and now it's 2:53,

 9   Your Honor.

10        I would just ask that we end this at

11   5:30 or, at the latest, 6:00.

12        THE COURT:  All right.  Look, just

13   go to 6:00 and finish this up.  No more

14   delays.

15        MR. MIZRAHI:  Your Honor,

16   Plaintiff's counsel's going to continue

17   to delay this deposition.  He's going to

18   continue to delay it.

19        MR. LEON:  Your Honor, we have

20   not --

21        THE COURT:  Excuse me.  I don't know

22   what you expect me to do.  I'm not in the

23   room.  I don't know what he's saying or

24   how things are being delayed.

25        How, exactly, are you expecting me