# LAW OFFICES OF WILLIAM CAFARO

*William Cafaro, Esq.*
ADMITTED IN NY, CA, MD & TX
Email: *bcafaro@cafaroesq.com*

*Amit Kumar, Esq.*
*Managing Attorney*
ADMITTED IN NY & NJ
Email: *akumar@cafaroesq.com*

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: *lleon@cafaroesq.com*

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

June 30, 2020

**<u>Via ECF</u>**
Hon. Steven L. Tiscione, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

     Re: Chincha v. Patel
       Case No.: 17-cv-06127-ILG-ST

Your Honor:

  This firm represents Plaintiff Carlos Chincha in the above-referenced action brought under the Fair Labor Standards Act and New York Labor Law against Defendant Manojkumar Patel. We move for partial reconsideration of Your Honor's Order, dated May 28, 2020, particularly the section allowing Defendant to re-depose Plaintiff and awarding a limited amount in fees and costs.

  **I.** **<u>Plaintiff's Motion for Sanctions and The May 28, 2020 Decision.</u>**

  As discussed in our motion for sanctions, dated 5/15/2020, defense counsel, Jason Mizrahi, tampered with microphones during Plaintiff's deposition, repeatedly attempted to spy on my privileged communications with Plaintiff during a break, and lied to Your Honor when he was confronted about everything. *See* **Exhibit ("Ex.") 1**. Accordingly, we asked the Court to render an Order striking Plaintiff's transcript and stating that the defense could not rely upon it in any way. We also requested an award of attorneys' fees and costs related to making our motion and preparing for **and participating** in Plaintiff's deposition.

  The Court ultimately held that Plaintiff's deposition transcript was stricken. Although the Court concluded that Mr. Mizrahi had tampered with the microphones during the deposition **and inexcusably lied**, it ruled that Defendant would be allowed to re-depose Plaintiff. The Court noted that, if Plaintiff's counsel were able to show where Mr. Mizrahi's actions had altered Plaintiff's testimony in the transcript, it would consider prohibiting Defendant from conducting another deposition. Additionally, the Court awarded Plaintiff's counsel fees and costs, but limited it to those associated with making the motion and preparing for Plaintiff's deposition.

1

## II.    The Standard for A Motion for Reconsideration

"The applicable case law states that 'the standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."' *Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*, 2015 U.S. Dist. LEXIS 148330, at *6 (E.D.N.Y. Nov. 2, 2015) (quoting *Shrader v. CSX Transport, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

## III.   New Information That The Court Did Not Consider At the Time of Its Decision

### a. Jason Mizrahi Repeatedly Turned Off The Microphones, Thereby Eliminating Plaintiff's Key Testimony and Counsel's Statements From the Official Record.

Plaintiff's deposition transcript undoubtedly shows that Mr. Mizrahi repeatedly meddled with the microphones - resulting in the exclusion of statements and vital testimony from the transcript - and brazenly lied to the Court about it on the record.  As such, we did not outline all the places where the transcript is altered or incomplete.  Nor did we think it was necessary to do so.  Indeed, the transcript, which is the only way of proving what was said at the deposition, is tainted because Mr. Mizrahi prevented the court reporter from taking down all statements made by the participants.  This has left us with the unfair burden of proving Mr. Mizrahi's wrongdoing with the very transcript that we accuse him of knowingly corrupting.

That being said, there are numerous instances in which Mr. Mizrahi manipulated the microphones and effectively eliminated Plaintiff's testimony and my statements from the record.  Tellingly, vital testimony from Plaintiff, which supported his overtime claims and disputed Defendant's defense, is mysteriously missing.  As background, Defendant claims Plaintiff is a frail old man with medical conditions that prevented him from working many hours during his employment.  In hot pursuit of this theory, Mr. Mizrahi asked Plaintiff many questions about his medical history and physical state.  Despite Plaintiff answering Mr. Mizrahi's questions and emphasizing that his medical conditions/ailments did not interfere with his ability to perform his job, the germane testimony is conveniently not in the transcript.  Mr. Mizrahi and Defendant are the only ones who stand to gain from these serious gaps in the record.

**1st Instance**: Mr. Mizrahi repeatedly asked Plaintiff why he uses a cane to walk. **Ex. 2**, 77:5-18.  The transcript only shows Plaintiff responding that he had poor balance, but excludes where he testified that it never affected his ability to perform work during his employment. *Id*.

**2nd Instance**: Mr. Mizrahi asked Plaintiff when he received surgery/treatment for his glaucoma. **Ex. 2**, 77:25-78:21.  The transcript shows that Plaintiff responded that he had eye surgery in April 2015, but omits the rest of his response in which he emphasized that it did not slow him down at work and that his condition was quickly addressed. *Id*.

**3rd Instance:** Mr. Mizrahi questioned Plaintiff about why he had received surgery. **Ex. 2**, 83:17-84:3.  Plaintiff replied that he received the surgery because he was unable to walk, but stressed that his inability to walk was temporary (no more than one day) and did not prevent him from doing his job. *Id*.  However, according to the transcript, Plaintiff merely responded, "[b]ecause I was unable to walk." *Id*.

2

**4th Instance:** Mr. Mizrahi asked Plaintiff if he was "able to stand for long periods of time" following his surgery and then whether surgery "negatively impacted [his] ability to engage in physical activity." **Ex. 2**, 89:6-90:6. Putting aside the ambiguity of these questions, Plaintiff's responses on the transcript were reduced to "yes" and "no" respectively. *Id*. In reality, Plaintiff further responded that not only was he back to work within a very short timeframe, but Defendant forced him to make up for any lost time. *Id*.

**5th Instance:** Mr. Mizrahi asked Plaintiff to confirm that he gets "tired frequently" because of his medical ailments. **Ex. 2**, 91:5-12. The transcript boils his response down to "Now, recently, not before", leaving out where he testified that he did not feel this way during his employment and that Defendant would never allow him to relax or take time off from work. *Id*.

**6th Instance:** Mr. Mizrahi asked Plaintiff ambiguous questions about whether he needs "to rest during the day" because of health problems that he experienced during his employment with Defendant and whether he rested during the day in 2015. Ex. 2, 91:13-92:14. I justifiably objected to these questions, but allowed my client to respond to them. *Id*. Plaintiff, who was clearly confused by the questions, asked Mr. Mizrahi to clarify what he meant. *Id*. Like in prior instances, Plaintiff's responses were cut down to a simple "no" or "yes" even though he said more than that. In fact, Plaintiff further stated that he rested at night when he slept, but that he didn't rest or take sleeping breaks during the workday as Mr. Mizrahi was suggesting. *Id*.

**7th Instance:** As I attempted to make statements and/or objections on the record, Mr. Mizrahi turned off my microphone (i.e., muted it) - without any notice or permission to do so. *See* **Ex, 2**, 94:2-23. I know that he did this because I received a notification on my screen from Zoom indicating that Mr. Mizrahi was muting my microphone while I was talking. *Id.* at 94:8-13. If not for this lucky break, I would not have caught Mr. Mizrahi, especially since he denied doing anything when I initially questioned him about it. *Id*. at 94:14-17.

**8th Instance:** Not even 10 minutes after the 7th instance, Mr. Mizrahi again repeatedly **muted** my microphone (at least twice in a row), this time while I was attempting to make certain statements on the record, including my instruction to Plaintiff to turn off his video and microphone prior to taking the next break. **Ex. 2**, 102:21-106:13. In fact, the translator loudly interjected, "I can't hear anymore" followed by "[t]he witness cannot hear us." *Id*. at 102:24, 103:4-5. Had the translator **and** witness not expressly stated that they could not hear us, no one would have noticed that Mr. Mizrahi was still tampering with the microphones.

These non-exhaustive examples highlight the indelible effect of Mr. Mizrahi's deliberate actions. It is beyond dispute that Mr. Mizrahi altered the record through his conduct. Although we are grateful that the Court decided to strike the transcript and to award us fees/costs, its ruling inadvertently gives the defense an enormous windfall and unquestionably prejudices Plaintiff. Yes, Mr. Mizrahi has been individually sanctioned, and he must reimburse us for the time and money we were forced to expend. However, absent a revised order from the Court, Mr. Mizrahi will subject Plaintiff - an elderly man with medical ailments who was already deposed for a full day - to a second day of unnecessary questioning. All because Mr. Mizrahi partook in deceptive and deplorable conduct that tainted the transcript. Conduct for which he has yet to apologize.

Put another way, in exchange for a small monetary sanction, Mr. Mizrahi will get a second bite at the apple during which he will surely try to fix his strategic and substantive shortcomings from the first deposition. Simply put, if the goal is to punish Mr. Mizrahi for his actions and to

3

deter similar behavior in the future, especially during this era of remote depositions, the Court should not allow Mr. Mizrahi to reap the rewards of his indefensible dishonesty. Certainly not after the Court determined that Mr. Mizrahi has "zero credibility" in this case.

### b. Awarding Fees/Costs Related to Making Plaintiff's Motion and Preparing for the Deposition Fails To Cover The Time and Expense Incurred At The Deposition.

As indicated above, we previously asked the Court to award us fees and costs for making our motion for sanctions and for preparing **and participating** in Plaintiff's deposition. The Court granted our request, but did not provide fees and costs for partaking in the deposition. We are unsure if the Court overlooked this aspect of our request or simply opted not to grant it. Either way, it is only fair that Mr. Mizrahi also be responsible for these fees and costs. Even if the Court allows Mr. Mizrahi to depose Plaintiff a second time, the first deposition was an unnecessary legal proceeding rendered null and void by Mr. Mizrahi's actions. A legal proceeding that started at around 10:30 a.m. and ended at 6:10 p.m. Thus, we ask that the Court revise its order to award fees and costs for defending this superfluous deposition.

### IV. Conclusion

In light of the foregoing, we request that the Court revise its Order, dated May 28, 2020, to (1) prohibit Defendant from deposing Plaintiff again and (2) award fees costs for time spent participating in Plaintiffs deposition. Finally, we ask for fees and costs associated with having to make this motion for reconsideration.

Respectfully submitted,
/s/
Louis M. Leon, Esq. (LL 2057)