

# LAW OFFICES OF WILLIAM CAFARO

*William Cafaro, Esq.*
ADMITTED IN NY, CA, MD & TX
Email: *bcafaro@cafaroesq.com*

*Amit Kumar, Esq.*
*Managing Attorney*
ADMITTED IN NY & NJ
Email: *akumar@cafaroesq.com*

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
www.cafaroesq.com

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: *lleon@cafaroesq.com*

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

May 15, 2020

**<u>Via ECF</u>**
Hon. Steven L. Tiscione, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    Chincha v. Patel
                 Case No.: 17-cv-06127-ILG-ST

Your Honor:

      This firm represents Plaintiff Carlos Chincha in the above-referenced action brought under the Fair Labor Standards Act and New York Labor Law against Defendant Manojkumar Patel. We write to request that defense counsel, Mr. Jason Mizrahi, be sanctioned for his egregious and unethical conduct during Plaintiff's deposition, which tainted the proceeding and transcript.[1]

      During Plaintiff's deposition, which was conducted remotely using the Zoom application, Mr. Mizrahi broke with all norms of decency and ethics. Specifically, he abused Zoom "host/co-host privileges" by purposely and repeatedly tampering with the undersigned's microphone so that the court reporter, translator, and Plaintiff could not hear him during the deposition. Mr. Mizrahi admitted this on the record. We are convinced Mr. Mizrahi did this throughout the deposition - to the undersigned, Plaintiff, and others - to gain an unfair, tactical advantage. And it worked; Plaintiff's deposition was frustrated, and the transcript is incomplete.

      Even though I zealously complained to Mr. Mizrahi about his unacceptable behavior and threatened him with sanctions if he continued, he took it one step further. Indeed, during a break, Mr. Mizrahi repeatedly manipulated Plaintiff's microphone in order to spy on communications between Plaintiff and his counsel. Even worse, Mr. Mizrahi lied to the Court about what he had done. The transcript and attached supporting declaration prove the accusations against him.

      Knowing that there is no legitimate excuse or explanation for Mr. Mizrahi's actions, he will no doubt try to obfuscate the issues. In fact, in his opposition to Plaintiff's request to submit

---

[1] Although Your Honor's Rules limit letter motions to three pages, given the extensive underlying facts and serious relief sought by Plaintiff's counsel, we ask that the Court accept our entire submission.

1

the instant motion, he already started hurling baseless accusations against the undersigned, without addressing the underlying accusations with which he is 100% familiar. However, as this is a motion for sanctions against Mr. Mizrahi for his deplorable conduct, we will focus only on that.

### I. Conducting Remote Depositions *Via* the Zoom Application

On April 2, 2020, the parties agreed that Defendant's deposition would be conducted remotely on April 10, 2020. [DE 56]. Later that day, the parties agreed, and the Court subsequently ruled, that Plaintiff's deposition would be conducted remotely on April 23, 2020. [DE 57]. On April 10, 2020, Plaintiff's counsel conducted Defendant's deposition through Veritext Legal Solutions, while on April 23, 2020, Mr. Mizrahi conducted Plaintiff's deposition through U.S. Legal. Both depositions were conducted remotely using the Zoom application. As the Court was advised, due to Plaintiff's technological limitations, Shirley Sanchez (Plaintiff's daughter) provided technical support to Plaintiff for the entire deposition. *See* **Sanchez Decl.**¶¶ 3-6.

Zoom is a web-based video conference tool that allows users to have meetings online using their electronic devices, including but not limited to desktops, laptops, tablets and smart phones. Amid the COVID-19 pandemic, Zoom has quickly become the go-to application for conducting remote legal proceedings, such as depositions, settlement conferences, and mediations, as well as for holding all kinds of remote meetings.

Zoom is easily downloaded onto most electronic devices. Prior to any Zoom conference, each participant receives an invite link from the "host" of the event. Generally, this link does not become active until about 30 minutes prior to the event. Once the event starts, you click on the invite link, which then takes you to a virtual room where all participants who have logged in are waiting. You have the option of participating in the Zoom event using your video camera and microphone so that the other participants can see and hear you.

During the Zoom event, you are able to simultaneously view live videos of all participants as well as hear them. The live videos are all visible in the center of the screen (they can be set to "full screen") and icons for your video and microphone are available on the bottom of the screen. Each user can turn his (and no none else's) video on and off at will. The same is true for each user's microphone. In a remote deposition, everyone must have both his video and microphone on while "on the record." Otherwise, the proceeding and transcript will certainly be incomplete.

A Zoom host is the person who created the Zoom event and has complete control over the meeting and all its settings. *See* https://support.zoom.us/hc/en-us/articles/360040324512-Roles-in-a-meeting and https://kb.iu.edu/d/aodf. A host can designate one or more co-hosts. *Id*. Except for ending the meeting and designating other co-hosts, the co-host has the same unbridled control over the meeting and settings as the host. *Id*. Most notably, both the host and co-host have "privileges" to "mute/unmute" any of the participants' microphones. *Id*.

### II. Mr. Mizrahi Abuses Zoom Host/Co-Host Privileges to Gain An Unfair Advantage During the deposition and to Spy On Communications between Plaintiff and Counsel.

At the beginning of Plaintiff's deposition, it became clear that Mr. Mizrahi intended to video record the proceeding through US Legal. **Exhibit ("Ex.") 1**, 9:9-24. After pointing out that Mr. Mizrahi had improperly noticed the deposition by failing to advise us that he would be video recording it, Mr. Mizrahi stated that he would not do so. *Id*. Before the US Legal employee, who

2

was tasked with video recording the deposition, signed off from the Zoom meeting, he gave host/co-host privileges to Mr. Mizrahi.

During Plaintiff's deposition and as I attempted to make statements and/or objections on the record, Mr. Mizrahi repeatedly **turned off my microphone (i.e., muted it)** - without any notice or permission to do so. *See* **Ex, 1**, 94:2-23, 102:24-105:7; Sanchez Decl. ¶ 7. I know that he did this because I received silent, but clear, notifications on my screen from Zoom indicating that Mr. Mizrahi was muting my microphone while I was talking. *Id*. The first time I <u>**caught**</u> Mr. Mizrahi muting my microphone, he explicitly denied doing so. **Ex. 1**, 94:8-17.

Not even 10 minutes later, Mr. Mizrahi again repeatedly **muted** my microphone (at least twice), this time while I was attempting to make certain statements on the record, including my instruction to Plaintiff to turn off his video and microphone prior to taking the next break. **Ex. 1**, 102:21-106:13; **Sanchez Decl.** ¶¶ 7-8. In fact, the translator loudly interjected, "I can't hear anymore" followed by "[t]he witness [Plaintiff] cannot hear us." **Ex. 1,** 102:24, 103:4-5. This demonstrated that Mr. Mizrahi was likely also tampering with the other microphones. *See* **Sanchez Decl.** ¶¶ 7-9. True to form, Mr. Mizrahi firmly stood by his outrageous conduct:

> **Mr. Leon**: How many more legally inappropriate things can you do in this deposition? You've already been told by the federal court judge to stop asking inappropriate questions. Now you're cutting off my mic?
>
> **Mr. Mizrahi**: Yeah.
>
> **Mr. Leon**: No. You don't get to do that.
>
> **Mr. Mizrahi**: You're wasting everyone's time, so I'm cutting your mic.

**Ex. 1**, 103:24-104:10.

I advised Mr. Mizrahi that manipulating the microphones for his benefit was wholly inappropriate and threatened to cancel the deposition and seek monetary sanctions against him and his firm if he continued his behavior. **Ex. 1**, 105:3-16. However, Mr. Mizrahi defiantly walked away from the computer screen for the duration of my statements and only returned once I had finished. **Exhibit 1**, 105:3-21. Before Plaintiff took the break, I gave the following instruction to my client: **"Mr. Chincha, please have your daughter cut off the mic and the video while we take that break to stop [defense] counsel from engaging in anything that might be [in]appropriate."[2]** **Ex. 1,** 105:22-106:1. Plaintiff's daughter shut off his video and microphone, and they went on break. **Ex. 1**, 106:9-17; **Sanchez Decl.** ¶¶ 11-12.

After Plaintiff went on the break but right before counsel went off the record, Mr. Mizrahi sternly warned me that I was "prohibited from engaging in any *ex parte* conversations or consultations" with Plaintiff during the break. **Ex.1,** 106:22-107:8. It was apparent that Mr. Mizrahi was concerned that my client and I would have a conversation during the break. After I responded to Mr. Mizrahi's remarks, we all took a break. **Ex. 1**, 107:9-21.

---

[2] We note that every time participants in the deposition, including Mr. Mizrahi, stepped away from their screen during a break, they turned off their video and microphone. Like with leaving the room during an in-person deposition, this was intended to ensure complete and utter privacy.

3

Shortly after breaking, I spoke on the phone to Plaintiff and Ms. Sanchez, who urgently informed me that Mr. Mizrahi had **unmuted (turned on)** Plaintiff's microphone at least 3-4 times during the break. *See* **Ex. 2**, 108:19-109:12; **Sanchez Decl. ¶¶** 13-17. Each time Mr. Mizrahi **unmuted** Plaintiff's microphone, Ms. Sanchez would turn it back off, and Mr. Mizrahi would immediately turn it back on. **Sanchez Decl. ¶¶** 13-17. Mr. Mizrahi clearly believed that my client and I were talking on the phone at that moment, which we were, and surreptitiously and repeatedly **turned Plaintiff's microphone back on** in an effort to spy on conversations between Plaintiff and his counsel. *Id*.

Within seconds of discovering what Mr. Mizrahi was doing behind the scenes, I had a conversation with him off the record during which I accused him of violating all norms of decency and his ethical obligations as an attorney. *See* **Ex. 2**, 108:19-109:25; **Sanchez Decl. ¶** 17. Once on the record, I stated that, absent a Court Order relieving him of host privileges and stating that he could not tamper with the microphones anymore, we would not continue. **Ex. 2**, 109:13-110:21. At no point did Mr. Mizrahi ever deny that he had continued **muting** my microphone or had tried listening to Plaintiff's private conversations with me. Not even once. We ultimately called the Court, and since Your Honor wasn't available at that moment, we left a message with the law clerk. **Ex. 2**, 111:1-112:5. Shortly after, I overheard US Legal finally take away host/co-host privileges from Mr. Mizrahi and give it to the Court Reporter. *See* **Sanchez Decl. ¶** 18; *see also* **Exhibit 2**, 120:2-5.

### III. Mr. Mizrahi Lies to the Court About Abusing His Zoom Host/Co-Host Privileges, Even Though he Explicitly Admitted Doing So On The Record.

The Court subsequently called counsel back. During the call, I informed the Court about Mr. Mizrahi interfering with the microphones and his attempts to listen to a confidential phone call between counsel and Plaintiff. **Ex. 2**, 115:1-118:15. Shockingly, although on page 104 of the transcript, Mr. Mizrahi admitted to "cutting off [Plaintiff's counsel's] mic", on page 119 he had the audacity to lie to Your Honor about the accusations against him:

> **Mr. Mizrahi:** "I have no idea what [Plaintiff's counsel is] talking about with muting or un-muting anybody's microphone."

**Ex. 2,** 119:17-120:1.

To be clear, Mr. Mizrahi never attempted to qualify this statement for the Court, much less admit that he had meddled with the microphones. His only statements on the topic were false and purposely misleading, anything to avoid consequences for his actions. In the end, the Court stated that it would be difficult to make a ruling without reviewing the transcript and gave Plaintiff's counsel leave to file any appropriate motion against the defense. **Ex. 2**, 125:1-12.

### IV. Legal Arguments

#### 1. Mr. Mizrahi Repeatedly Tampering with the Microphones During Plaintiff's Zoom Deposition Delayed and Frustrated the Proceedings, In Violation of FRCP 30(d), and Unreasonably and Vexatiously Multiplied Them, in Violation of 28 U.S.C. § 1927.

Under FRCP 30(d)(2), "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays,

4

or frustrates the fair examination of the deponent." Under 28 U.S.C. § 1927, any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." As Judge Glasser, who also presides over this case has previously indicated, 28 U.S.C. § 1927 sanctions are appropriate "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," and upon "a finding of conduct constituting or akin to bad faith." *Wynder v McMahon*, 2012 US Dist LEXIS 22448, at *4 (EDNY Feb. 22, 2012) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (citations omitted)).

The Court also has the inherent authority "'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Wisser v Vox Media, Inc.*, 2020 US Dist LEXIS 57705, at *14 [SDNY Apr. 1, 2020]) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017) (internal quotation marks omitted)). "Before doing so, a court must make a finding of bad faith similar to that required under § 1927." *Wisser*, 2020 US Dist LEXIS 57705, at *14 *(citing Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).

Mr. Mizrahi's underhanded actions undoubtedly impeded, delayed, and frustrated the **fair** examination of Plaintiff. There were at least three occasions that we caught Mr. Mizrahi **turning off my microphone** resulting in the court reporter being unable to take down all my statements and the interpreter being unable to translate for my client. The first time we caught him, he denied any wrongdoing. The other times, he boldly admitted doing it. It is important to note, however, that these were **only** the times that we **caught** Mr. Mizrahi red-handed. We firmly believe that Mr. Mizrahi did this throughout the deposition, but that it unfortunately escaped our detection. Indeed, there are countless places in the transcript in which it is readily apparent to us that either Plaintiff's responses or my statements were not completely taken down.

Making matters worse and clearly undeterred by my countless demands that he stop engaging in inappropriate conduct, Mr. Mizrahi further abused his host/co-host privileges by repeatedly **unmuting (turning on)** my client's microphone during the break, all in a deplorable attempt to spy on a privileged conversation between my client and I during the break. Although Mr. Mizrahi will surely deny this accusation,[3] we remind the Court that he lied to Your Honor about tampering with the microphones, even though only a few minutes earlier he admitted - on the record - to repeatedly cutting off my microphone. If Mr. Mizrahi was willing to lie to an esteemed federal court judge about something that he had just admitted to on the record, he would certainly lie about the most serious charge against him to which he never made any admission on the record, namely that he hacked my client's microphone to violate attorney-client privilege and confidentiality.

Due to Mr. Mizrahi's malicious actions, which were devoid of any legal merit and obstructed the deposition, we were forced to make countless phone calls to the Court and otherwise delay the deposition, incurring considerable time and expense. And now, after reviewing the transcript, it is abundantly clear that we have been deprived of the right to a complete and accurate deposition transcript, which is what Mr. Mizrahi wanted all along. As a result, we are constrained to make the instant motion, further multiplying these proceedings.

---

[3] Ms. Sanchez, Plaintiff's daughter who was present for the whole deposition and personally witnessed Mr. Mizrahi tampering with the microphone, has submitted a sworn declaration outlining his misdeeds.

Mr. Mizrahi's actions must have consequences, particularly amid the COVID-19 pandemic when counsel across the country are depending on various programs and applications to conduct fair and impartial legal proceedings. As Plaintiff's deposition was not recorded (other than by a stenographer) and there is no way of conclusively proving the precise amount of times that Mr. Mizrahi rigged the microphones for his benefit, the transcript must be entirely invalidated, with the understanding that the defense cannot use the transcript at any time in this case, whether on motion or at trial, whether it be in their case in chief, on cross, or in rebuttal. Furthermore, Mr. Mizrahi should be held personally liable for his inexcusable conduct and be forced to pay attorneys' fees and costs associated with making this motion and for all time associated with preparing for and participating in Plaintiff's deposition. This is the bare minimum that fairness demands under these circumstances. Anything less would be an undeniable windfall for both Mr. Mizrahi and his client.

2. **Mizrahi's Misrepresentation to the Court and His Attempts to Listen to Communications between Counsel and Plaintiff Violate the Local Civil Rules of EDNY and the N.Y. Rules of Professional Conduct.**

As is well known, counsel are obligated to be truthful in their dealings with the Court. *See* N.Y. Rules of Professional Conduct Rule 3.3(a), (d), (f); *see, e.g., Kosher Sports, Inc. v. Queens Ballpark Co., LLC*, 2011 WL 3471508, at *7 (E.D.N.Y. Aug. 5, 2011) ("As officers of the court, all attorneys conducting discovery owe the court a heightened duty of candor."). Furthermore, attorney-client privilege and confidentiality are sacrosanct and fundamental, protected rights of each party. *See* N.Y. Rules of Professional Conduct Rule 1.6(a), (c). Lastly, attorneys are prohibited from engaging in any illegal conduct or conduct contrary to the N.Y. Rules of Professional Conduct, especially ones that involve dishonesty, fraud, deceit, or misrepresentation. *See* N.Y. Rules of Professional Conduct 3.4(a)(6), 8.4(b), (c), (h).

Here, Mr. Mizrahi has fallen dismally short of every one of the Rules of Professional Conduct listed above. Indeed, when I informed the Court about what Mr. Mizrahi was doing with the microphones, he feigned ignorance on the topic, in an effort to deceive Your Honor. He never remotely attempted to fix these statements or offer any context for the Court. Simply put, he lied to Your Honor. No amount of backpedaling or excuses can change that.

Mizrahi also hacked Plaintiff's microphone and tried listening to his private phone call with me during the break. This is the most disturbing violation of the ethical rules that I have ever witnessed or read about. It's baffling and cannot be left unpunished.

Given that Mizrahi's violations of the N.Y. Rules of Professional Conduct cannot be genuinely disputed, we ask that the Court, in addition to awarding the other relief sought by Plaintiff, refer this matter to the Attorney Disciplinary Committees of both the EDNY and State of New York. *See* Loc. Civ. R. 1.5(b)(5); N.Y. Rules of Professional Conduct 8.3(a), 8.5(a).

V. **Conclusion**

In light of the foregoing, we ask that the Court render an Order deeming Plaintiff's entire deposition transcript invalidated and stating that the defense cannot rely upon it in any way, in any motion, hearing or trial. We also ask for an award of attorneys' fees and costs associated with having to make the instant motion, as well as the time spent in connection with preparing and participating in Plaintiff's botched deposition. Lastly, we ask that the Court publicly admonish

Mr. Mizrahi for his actions and, due to his blatant disregard for the ethical rules of conduct, refer this matter to the Attorney Disciplinary Committees of both the EDNY and State of New York. We welcome any opportunity to discuss this matter further and thank the Court for its attention and consideration.

                                                        Respectfully submitted,
                                                        _____/s/_____
                                                        Louis M. Leon, Esq. (LL 2057)